**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Edward ADAMS, Defendant-Appellant.**

**No. 16806.**

United States Court of Appeals
Seventh Circuit.

Nov. 26, 1968.

---

**841**

Thomas F. Londrigan, J. H. Weiner, Springfield, Ill., for appellant.

Richard E. Eagleton, U. S. Atty., Frank J. Violanti, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before HASTINGS, Circuit Judge, KNOCH, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Circuit Judge.

On October 24, 1967, defendant Charles Edward Adams was indicted by a federal grand jury, with four other men, for the armed robbery of the Land of Lincoln Bank, Springfield, Illinois, a federally insured bank, of $122,505.15 on July 14, 1967, in three counts, charging violations of Title 18, U.S.C.A. § 2113(a) (b) and (d). He was also indicted on the same date, with five men, for conspiracy to commit such bank robbery, charging a violation of Title 18, U.S.C.A. § 371.

All other defendants named in the four counts, except Adams, entered guilty pleas and are not concerned in this appeal.

Adams alone stood trial and was represented by privately employed counsel. Following a jury trial, commencing January 31, 1968 and concluded on February 8, 1968, Adams was found *not guilty* on the three substantive counts and *guilty* on the conspiracy count by the jury verdict. He was sentenced to a term of five years and a fine of $10,000 on the conspiracy conviction, and now appeals therefrom. He was represented on appeal by privately employed counsel, other than his trial counsel.

In substance, the principal issue on appeal challenges the sufficiency of the evidence to support the jury's verdict of guilty on the conspiracy count. An additional question relates to the use of certain squad car and radio logs.

Several facts are not disputed. The Land of Lincoln Bank was robbed of $122,505.15 on July 14, 1967 by three masked gunmen. At the time of the robbery the bank was federally insured. The three masked gunmen were codefendants, Manus Paoni, William Wright and Robert Wilson. Defendant Adams was a police officer of the Springfield police department.

Testifying as witnesses for the prosecution were five officers and employees of the bank, eight special agents of the Federal Bureau of Investigation, Paoni (one of the masked gunmen), Barbara and Betty Dobson, sisters, Dale Minnick, owner of a certain Chevrolet automobile used in the robbery, and his son David Minnick.

Testifying as witnesses for defendant Adams were a police officer on the Springfield force, an FBI agent, the cashier of the robbed bank, a hunting friend of Adams and Silver Suarez, Chief of Police of the Springfield department.

In addition, there were certain photographs, records and stipulations introduced in evidence.

Reviewing the evidence in the light most favorable to the Government, as we are required to do, the jury could reasonably have found the following facts, established by competent credible evidence, sufficient to support its verdict that Adams was guilty on the conspiracy count.

Adams knew the three masked gunmen and was seen with one or more of them on several occasions prior to the robbery, on the day of the robbery and after the robbery. He planned the robbery, fixed the date of the robbery and arranged for the engagement of the participants. He provided the stolen get-a-way car, driven by Paoni and used by the three robbers to drive to the bank and to flee after the robbery. He provided and *drove* the second get-a-way car in which he met the three robbers after they abandoned the first car. He provided and arranged for the use of the Barbara Dobson apartment to which he took the three robbers after the robbery to conceal them and the stolen money and where the loot was divided into four parts and distributed to Adams and the three robbers. He provided a copy of the "bait list" which contained a list of the serial numbers of certain twenty dollar bills handed over to the robbers by the bank.

We have not found it necessary here to recite the details of the plans for the robbery, the accomplishment of the robbery itself and the meeting after the robbery. Neither have we set out the events leading to the apprehension of the participants and the recovery of part of the stolen money. We have carefully examined the record and it is all there.

■ We find from the record before us that the evidence is more than sufficient to support the guilty verdict. It is true that Adams was acquitted on the three substantive counts. However, he was not one of the three masked robbers and for whatever reasons the jury may have had, it did find him guilty on the conspiracy count. The jury could reasonably have considered and found Adams to have been the idea man, the arranger, the provider and the divider of the spoils.

The Government chiefly relied on the testimony of Paoni, a confessed accomplice of Adams, together with important evidence given by the Dobson sisters. Adams sharply attacks the credibility of these three witnesses, all of whom, in varying degrees, have unsavory records. However, the evidence is quite clear to us that Adams accepted and used them for what they were.

■ It is well settled, of course, that in general, credibility determinations are not reviewable on appeal. Concerning sufficiency of the evidence on an appeal from conviction, questions of credibility and the weight to be assigned to the evidence are for the jury to determine. Reviewing the evidence before us in the light most favorable to the Government, we readily conclude that Adams' guilt was established beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Sosa, 7 Cir., 379 F.2d 525, 527 (1967); United States v. Wilson, 7 Cir., 361 F.2d 134, 136 (1966).

■ Adams further charges in substance that the uncorroborated testimo-

ny of an accomplice, Paoni, is insufficient to convict. This challenge falls short of the mark in several respects. The trial court properly instructed the jury concerning the Paoni testimony.[1] Cf. United States v. Battaglia, 7 Cir., 394 F.2d 304, 313–314 (1968), and cases there cited. Adams made no objection to the instruction. And, in material part at least, Paoni was corroborated by the Dobson sisters, certain of the FBI agents, Minnick and others. Further, the jury could reasonably have believed Paoni beyond a reasonable doubt.

Adams' additional contention on this appeal charges the district court with prejudicial error in improperly allowing the Government to willfully conceal certain records it should have produced under Rule 16, Federal Rules of Criminal Procedure, 18 U.S.C.A., and permitting their introduction on cross-examination of a defense witness.

It appears that the Government furnished a substantial inventory of materials and records in its possession, produced on Adams' motion pursuant to Rule 16(b). The rule includes papers "which are within the possession, custody or control of the government." Rule 16(g) relates to the continuing duty to disclose.[2]

In the course of its investigation, the FBI obtained a photocopy of the record of hours and days worked by Adams for the month of July, 1967, and this was produced for inspection and copying and furnished to Adams. The original, of course, was in the possession of the Springfield police department and never in the possession of the United States. Subsequently, government counsel, in checking for a possible discrepancy in the testimony of witnesses, discovered just before trial that there existed other records in the custody of the Springfield police which indicated that the above mentioned work record of Adams might not be completely accurate. Chief of Police Suarez was subpoenaed by the Government which subsequently determined it did not need his testimony. Suarez was called for the defense.

The records in controversy concern squad car logs and radio logs of the Springfield police department. The Adams work record showed that Adams worked on the 11:00 p.m. to 7:00 a.m. shift on July 15 and 16, 1967, while the squad car and radio logs indicate that Adams did not work on that shift. At best this raised a question of correctness. In any event, it is undisputed that

1. "You have heard the testimony of Manus Paoni, an alleged accomplice in this case. You are instructed that an accomplice is one who unites with another person in the commission of a crime voluntarily and with common intent. An accompl'ce does not become incompetent as a witness because of participation in the crime—in the criminal act charged. On the contrary, the testimony of an accomplice alone, if believed by you, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, you should keep in mind that such testimony is to be received with caution and weighed with great care. You should not convict the Defendant upon the unsupported testimony of an accomplice unless you believe the unsupported testimony beyond all reasonable doubt."

2. "(g) Continuing Duty to Disclose; Failure to Comply. If, subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested or ordered which is subject to discovery or inspection under the rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances. As amended Feb. 28, 1966, eff. July 1, 1966."

the bank robbery occurred about 9:45 a. m. on July 14, 1967. The only value of the logs would seem to relate to the credibility of the Dobson sisters when they said Adams had spent the night after the robbery in a motel with them.

On cross-examination of Suarez, who testified concerning Adams work record, the Government presented the squad car and radio logs disputing such record. Adams claimed surprise and prejudicial concealment of the logs.

The district court immediately granted the defense a continuance to enable it to examine the logs. The court further indicated it would grant additional time to the defense if needed. The logs, after inspection, were admitted over objection.

■ Adams' claim of prejudicial error is unfounded. The trial court clearly acted in compliance with Rule 16(g). We have serious doubt that records in the possession of Springfield police come within the purview of Rule 16(b). The copy of the original Adams work record had been furnished to Adams by the Government in the original inventory. We fail to find any prejudice to Adams resulting from the discretionary order of the district court in granting the continuance, subsequently admitting the evidence and denying a motion for a mistrial.

Adams, an experienced police officer, must have known of such logs, yet never undertook to get them. Whether he slept with either of the Dobson girls after the robbery cannot be said to have prejudiced the jury in finding him guilty on the conspiracy count when at the same time it found him not guilty on the three substantive counts.

We hold that the district court did not err in this regard.

For the foregoing reasons, we hold that the judgment of conviction appealed from should be and it is now affirmed.

Affirmed.