UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie T. SANGSTER, Defendant-
Appellant.

No. 18373.

United States Court of Appeals,
Seventh Circuit.

May 25, 1971.

**1290**

George C. Howard, Chicago, Ill., for defendant-appellant.

Donald B. Mackay, Frank J. Violanti, U. S. Attys., Springfield, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and PELL and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant Willie T. Sangster was charged together with four defendants, Robert L. Johnson, Leroy Rogers, Jr.,

Dale Dewitt Bundy and Willie Lee Hicks, Jr., in Count I of a four-count indictment with conspiracy to rob the Northtown Bank of Decatur, a federally insured bank in Decatur, Illinois, on December 16, 1968, in violation of Title 18, U.S.C.A. § 371.[1] Six overt acts were alleged in Count I, in the sixth of which was named one Onzie Melvin Cole, an unindicted coconspirator.

Defendant Sangster was charged together with defendants Bundy and Hicks in Counts II, III and IV with substantive violations of Title 18, U.S.C.A. §§ 2 and 2113(a),[2] §§ 2 and 2113(b) and §§ 2 and 2113(d), respectively, of the aider and abettor and bank robbery statutes.

Defendant Sangster was granted a separate trial on his plea of not guilty to all four counts. Following a trial by jury, he was found guilty on Counts I and II and not guilty on Counts III and IV. He was given concurrent sentences of five and eighteen years, respectively on Counts I and II, a total of eighteen years. He appeals from the judgment of conviction and sentence. We affirm.

Defendant Sangster was represented at all times on trial and in this appeal by privately retained counsel. Posttrial motions for judgment of acquittal notwithstanding the verdict of guilty or in the alternative for a new trial were denied.

Codefendants Johnson and Rogers were charged only in the conspiracy Count I. Codefendants Bundy and Hicks were charged on all four counts. All four were represented by either pri-

---

1. In relevant part, § 371 reads: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

2. In Count II, it was charged that Sangster (with Bundy and Hicks) "wilfully and unlawfully and with felonious intent by force and violence and by intimidation, did take from the person and presence of Lucille Beckett and Elzora Channer, employees of the Northtown Bank of Decatur, Decatur, Illinois, $5,544.29 in money belonging to and in the care, custody, control, management, and possession of the Northtown Bank of Decatur, Decatur, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation; in violation of Sections 2 and 2113(a) of Title 18 of the United States Code."

vate or court-appointed counsel. Each entered pleas of guilty to the counts in which they were charged before Sangster's trial. Johnson and Rogers were granted probation and the imposition of sentence on Count I was suspended. Hicks was granted probation and the imposition of sentence on Count III was suspended. Counts I, II and IV were dismissed as to him on the Government's motion. Bundy was denied probation and on his plea of guilty was sentenced to serve five years on Count I and eight years on each of Counts II, III and IV, all to run concurrently, a total of eight years, with parole eligibility to be determined pursuant to Title 18, U.S.C.A. § 4208(a) (2). Bundy was then serving a term of imprisonment on another charge in the Illinois State Penitentiary at Joliet, Illinois.

All four codefendants, Johnson, Rogers, Hicks and Bundy, voluntarily testified for the Government in Sangster's trial. Their combined testimony undoubtedly led to Sangster's conviction.

On appeal, Sangster seeks reversal on grounds of insufficiency of the evidence to warrant the jury verdict of guilty and a variety of charged trial errors.

We have carefully reviewed the entire record in this case, together with all reasonable inferences which may be drawn therefrom, in the light most favorable to the Government, as we must do, on the issue of the sufficiency of the evidence to sustain the convictions of Sangster on both the conspiracy and substantive counts. We find it to be overwhelming in support of the jury verdicts.

I

The evidence in support of the conspiracy count was furnished by Sangster's codefendants, his four accomplices in this robbery. Accomplice Johnson testified to a series of conversations with Sangster beginning in late November, 1968 concerning "making some money"; several auto trips to the Northtown Bank area for the purpose of "casing the place over"; the payment of $100 to him by Sangster in the middle of December, 1968; and three trips in his car to the bank accompanied by Hicks, Rogers and Sangster.

Accomplice Rogers testified to a series of conversations with Sangster beginning in August, 1968 concerning a proposed "gig" (robbery); to a trip with Sangster to Northtown Bank to "case the place"; to an explanation to him by Sangster of how the tellers in the drive-in station brought the money out from the bank in the morning and back into the bank in the evening; that Sangster, Johnson and Hicks were with him on several of these trips; and of Sangster's offer to pay him 10 per cent "of the take."

Accomplice Hicks testified generally in corroboration of Johnson and Rogers. On the day of the robbery, December 16, 1968, some time before 5:00 p. m., he drove his 1959 green Chevrolet station wagon to the Pershing Bowl, transporting Onzie Cole and Sangster with him. He saw Bundy parked there in his Cadillac. He drove from the Pershing Bowl to the Northtown Ford agency shortly before 5:00 p. m. where Sangster got out of Hicks' car. As he prepared to leave, Sangster came out and got back in Hicks' car and he drove Sangster back to the Pershing Bowl where Sangster got out. Hicks then drove home. He testified that he drove Sangster to the Northtown Bank that evening for the purpose of robbing it and that Sangster had told him to be out at the Pershing Bowl for that purpose. About a week after the bank robbery Sangster paid Hicks $500 from the robbery proceeds.

Accomplice Bundy testified that in early December, 1968 he had a conversation with Sangster at the latter's barber shop about "making some money"; that the following night he again met Sangster there and Sangster offered him $400 to let him put something in the trunk of Bundy's car; that Bundy was to park his car at the Pershing Bowling Alley and keep the trunk of the car "cracked"; and that Rogers, Johnson and Hicks

were present at these and other conversations. Bundy further testified that he followed Sangster's instructions and on the evening of December 16, 1968 parked his car at the Pershing Bowling Alley, left his engine running, opened the trunk of his car and waited; that a short time later, about 4:50 p. m., Hicks drove up in his station wagon; that Sangster had parked his own car directly in front of Bundy's car, got out and into the Hicks' station wagon with Hicks and Cole and the three drove away. They returned in about 15 minutes. He saw Sangster carrying something and place it in the trunk of his car, after which Hicks drove off with Cole. Sangster left in his own car as did Bundy. Sangster was wearing an overcoat, a black scarf around his neck and had a pair of sunglasses.

Shortly after driving away, Bundy stopped and examined the contents of the trunk of his car and found money, a revolver and a woman's purse. He took about $15 in currency from the money seen there. He drove to a destination Sangster had arranged and met Sangster. He opened the trunk of his car and they removed the contents. Sangster took all of the money and told Bundy he would get his later. Bundy testified that about 9:00 p. m. that evening he called Sangster and told him that Hicks had been picked up by the police. He then went to Bundy's house where Sangster gave him $250 and told him how he had robbed this bank, after hearing the report of the bank robbery on television.

On close cross-examination by defense counsel, the four accomplices did not recant their testimony. The jury was given proper cautionary instructions on accomplice testimony. The determination of credibility was within the province of the jury. Although Sangster testified in his own defense and categorically denied all of the testimony of his four co-defendants, it is quite clear that the jury was amply justified on this evidence in finding Sangster guilty in the conspiracy Count I.

## II

Much of the accomplice testimony in the conspiracy count is, of course, directly relevant to and in support of the jury guilty verdict on the substantive count.

It is undisputed that the Northtown Bank has two drive-in windows located about 40 feet from the bank and about 25 feet from the Northtown Ford parking lot, the Ford agency being adjacent to its parking lot. In the middle of December, 1968, about a minute or so after 5:00 p. m., dusk was at hand, with prevailing limited visibility.

Lucille Beckett and Elzora Channer were the two bank tellers on duty that day at the drive-in windows. Mrs. Beckett with more than $5,000 in cash left to take the cash back into the bank. After she had proceeded a few feet she was robbed by a lone gunman wearing an overcoat, a black scarf over the lower part of his face and sunglasses. Mrs. Channer came out from her window and was similarly accosted. She had no cash. Both tellers were forced to the ground by the gunman with some violence, abuse and profanity. The gunman took the cash, checks and some papers, together with Mrs. Channer's purse. While this was taking place, Mrs. Beckett's husband, who had come to meet his wife, came on the scene and was forced down between the parked cars with the tellers. Other than to describe the gunman as a Negro wearing the overcoat, black scarf and sunglasses, these three occurrence witnesses were unable to identify the robber then, subsequently at the lineup or at trial.

At the same time, Joseph F. Singleton, body shop foreman at Northtown Ford, left work at 5:00 p. m. and walked through the parking lot. He saw a man running from the direction of the Northtown Bank to a 1959 dark green Chevrolet station wagon. His attention was first attracted to the station wagon because it was parked in the Northtown Ford parking lot with its engine running and two male Negroes seated in it.

As the station wagon started moving he saw that the man running toward it was carrying something, was wearing a three-quarter length dark overcoat, and that his head and face were not covered. The man was a Negro and was not wearing dark glasses at that time. This man got in the slowly moving station wagon. Although it was dusk and he had only a side view of the running man, Singleton was able to identify positively the running man as defendant Sangster in a subsequent lineup on February 6, 1969 and at trial. Singleton's testimony was corroborated by accomplice Hicks. His statements given to investigating officers were furnished to defense counsel. The conduct of the lineup was not challenged. His identification of Sangster withstood cross-examination.

Another workman at Northtown Ford, Kenneth Wilber Tucker, testified that when he left work about 5:00 p. m. on December 16, 1968, he saw two male Negroes sitting in a Chevrolet station wagon next to where his car was parked.

As above stated, Sangster testified in his own defense and positively denied all Government testimony as hereinabove detailed. He said he was elsewhere in Decatur that day on personal affairs and at the time of the bank robbery was visiting his sick wife in the Decatur Hospital. A number of friends and relatives, including his wife, testified in support of his alibi. On rebuttal, Bundy testified that on December 16, 1968 Sangster told Bundy not to worry, that he had an alibi.

■■ The jury was properly and adequately instructed on the issues of credibility, accomplice testimony and eyewitness identification. It is well settled, of course, that in general, credibility determinations are not reviewable on appeal. United States v. Adams, 7 Cir., 403 F.2d 840, 842 (1968).

■■ It is now axiomatic that in resolving the issue of sufficiency of the evidence to sustain a conviction, questions of credibility and the weight to be assigned to the evidence are for the jury to determine. Having reviewed the evidence before us in the light most favorable to the Government, together with all reasonable inferences to be drawn therefrom, we readily conclude that Sangster's guilt was established beyond all reasonable doubt on the substantive count as well as the conspiracy count. It was overwhelming. Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Pope, 7 Cir., 409 F.2d 371, 373 (1969); United States v. Adams, *supra*; United States v. Sosa, 7 Cir., 379 F.2d 525, 527 (1967); United States v. Wilson, 7 Cir., 361 F.2d 134, 136 (1966).

### III

■ With some design we have made an extended statement of the record as it directly relates to the guilt or innocence of one charged with and convicted of a major felony—bank robbery "by force and violence, or by intimidation." Although denied under oath by the defendant, we have found the evidence of his guilt more than sufficient to support the jury verdict. Believing that to be of primary concern to a reviewing court, we approach the consideration of asserted procedural errors with great concern. They must withstand close scrutiny to reach the degree of prejudice requiring reversal.

■ Defendant makes an unsupported oral assertion that members of the black race were systematically excluded from the jury in violation of defendant's constitutional rights. Under the record here, this assertion is frivolous. The district court advised defense counsel that the jury panel was drawn pursuant to an approved model federal district court plan; offered to have the court clerk make the jury selection process available for inspection; stated that several Negroes were on the panel and all had been excused *at their own request*; and requested counsel to put his motion to dismiss the venire in writing. Counsel responded that he did not need a continuance for that purpose and said, "If I

**1294**

find my motion is ill-founded I will not proceed with it." Counsel did not proceed with it. We find no error. See Frazier v. United States, 335 U.S. 497, 503, 69 S.Ct. 201, 93 L.Ed. 187 (1948), and its progeny.

 Defendant contends that the trial judge intervened to a prejudicial degree in examining witnesses and thereby became an improper trial advocate. We have examined the record relating to each of the cited instances. They are largely concerned with a calm attempt on the part of the trial judge to settle disputed objections by trial counsel themselves. The trial court at all times presided in a restrained impartial manner. The one objectionable statement was when the court inadvertently referred to the then unidentified gunman as the "defendant." An objection was immediately made, sustained and the remark was ordered stricken from the record. No motion for mistrial was made. The inadvertent reference was subsequently connected up through the testimony of other witnesses. No harm was done. The jury was not presented with a close case for decision. United States v. Allegretti, 7 Cir., 340 F.2d 254, 256 (1964), cert. den., 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433; United States v. Coduto, 7 Cir., 284 F.2d 464, 468 (1960), cert. den., 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192; United States v. Wheeler, 7 Cir., 219 F.2d 773, 777–778 (1955), cert. den., 349 U.S. 944, 75 S.Ct. 872, 99 L.Ed. 1271; United States v. Earnhardt, 7 Cir., 153 F.2d 472, 474 (1946), cert. den., 328 U.S. 858, 66 S.Ct. 1350, 90 L.Ed. 1629. *Cf.*, United States v. Hill, 7 Cir., 332 F.2d 105, 106–107 (1964); United States v. Carmel, 7 Cir., 267 F.2d 345 (1959).

Defendant's complaint of the Government's cross-examination of his alibi witnesses is untenable. The tenor of such cross-examination was solely addressed to the question of their credibility, in most instances was not objected to by defendant at the trial and there was no abuse of the sound discretion lodged in the trial court. United States v. Pope, 409 F.2d, *supra* at 374.

Finally, defendant apparently intimates that the trial court failed to admonish the jury to scrutinize closely the testimony of an accomplice witness. The record is otherwise. The trial court thoroughly and correctly gave full cautionary instructions to the jury on such evidence as set out in the transcript at pages 517–518. We shall not further burden this opinion by repeating them here.

In sum, defendant's guilt was established beyond all reasonable doubt and the asserted procedural errors are totally devoid of merit.

The judgment of conviction and sentence on Counts I and II of the indictment is affirmed.

Affirmed.