UNITED STATES of America,
Plaintiff-Appellee,

v.

Eugene ROBINSON, Defendant-
Appellant.

No. 72-1112.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1972.

Decided Nov. 2, 1972.

Richard E. Reilly, Carl L. Dubin, Milwaukee, Wis., for defendant-appellant.

John O. Olson, U. S. Atty., and Eric J. Wahl, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, KILEY, Circuit Judge and CAMPBELL, Senior District Judge.*

DUFFY, Senior Circuit Judge.

Defendant Robinson was charged and found guilty at a bench trial of conspiracy to commit an offense in violation of 18 U.S.C. § 371 in that he retained stolen United States Money Orders valued at more than $100 with intent to convert the same to his own use, a substantive offense under 18 U.S.C. § 641.

* William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

Defendant was sentenced to a term of three years imprisonment. He now appeals the judgment of that conviction.

Defendant Robinson, Freddie Woods and Theodis Wright were all charged in the original indictment with engaging in a conspiracy to retain and convert stolen postal money orders which had been stolen from the Fonda, New York, Post Office. The indictment alleged that the defendants travelled to the Wisconsin Dells area and attempted to pass the money orders.

The overt acts charged are that Robinson cashed one stolen money order at the Kickapoo Don's Gas Station in Adams, Wisconsin in late March, 1970, and that he attempted to pass another stolen money order at Fedderly's Hardware Store in Wisconsin Dells, Wisconsin, on April 2, 1970.

Co-defendant Woods was similarly convicted of the conspiracy. Theodis Wright was dismissed by the government as a defendant and co-conspirator.

The principal government witness was Virgil Eigland, a friend of defendant Robinson and the operator of a gas station in Adams, Wisconsin.

Eigland testified that he had seen stolen postal money orders in Robert Wright's garage in Milwaukee early in March, 1970. He also testified that in late March, 1970, he, defendant Robinson, Freddie Woods and Theodis Wright drove to Wisconsin Dells; that during that trip they talked about being able to cash some of the postal money orders in the Wisconsin Dells area. In fact, Robinson gave some of the money orders to Virgil Eigland on that trip to Wisconsin Dells.

Eigland further testified that the four men stopped in the town of Wisconsin Dells and that he successfully cashed one of the money orders. He testified that defendant Robinson attempted to do likewise but was unsuccessful.

They then drove to Adams, Wisconsin where Robinson passed one of the stolen money orders at Kickapoo Don's Gas Station.

The following day, April 1, 1970, Eigland was arrested in Wisconsin Dells after attempting to negotiate one of the money orders from the series stolen from the Fonda, New York Post Office previously given to him by Robinson.

On April 2, 1970, the testimony showed that Robinson entered Fedderly's Hardware Store in Wisconsin Dells, gathered some merchandise and tendered a money order in payment. The clerk refused the money order and suggested to Robinson that he go to the bank. As Robinson left the store, the clerk noted the license number on his car as well as the color of the car. Mr. Fedderly, the owner of the store, then notified the police and told them someone had attempted to pass a money order in his store, relating to the police the license number of the car and its description.

Immediately thereafter, on April 2, 1970, Jack O'Dell, Chief of Police of Adams and Friendship, Wisconsin received an "all points bulletin" on the automobile described by the clerk at Fedderly's. The bulletin included the color of the car, and that its occupants were wanted for questioning concerning the attempted passing of a money order in Wisconsin Dells.

About 6:30 p. m. on the same day, Chief O'Dell observed an automobile with the license number which had been reported by the store clerk parked behind a building in Adams, Wisconsin, across the street from Virgil Eigland's D.X. Service Station. Defendant Robinson, Freddie Woods and Theodis Wright were in the car.

After summoning assistance, Chief O'Dell asked the three men to accompany him to the police station for questioning. Their car was locked and they accompanied Chief O'Dell to the sheriff's office.

A sheriff's deputy was stationed by the suspect's locked automobile to wait for the arrival of a tow truck. While positioned near the car, he peered into the locked vehicle and in open view observed a portion of a money order pro-

truding from the sun visor on the driver's side of the car. Approximately one-third of the money order was readily visible and legible from the outside of the car. The deputy read that visible portion which indicated that it was postmarked for Fonda, New York, and dated February 8, 1970 payable to S. D. Owens. The deputy then accompanied the impounded car to the sheriff's office where he and another officer effected the arrest of the suspects.[1]

On April 3, 1970, a search warrant issued for the car. Defendant Robinson was served with a copy of the warrant and the subsequent search of the car revealed fifty-three stolen postal money orders from Fonda, New York. Sixteen of the fifty-three money orders recovered from the car were endorsed in the name of S. D. Owens. At trial, a government document analyst testified that, in his opinion, Freddie Woods had endorsed the name S. D. Owens on the endorsed money orders.

The first question raised by defendant is whether the evidence presented at the trial was sufficient to support defendant's conviction of conspiracy. Defendant argues that there was no proof that he acted in concert with another person in committing a substantive offense.

■ It is well settled in our Circuit that no formal agreement is necessary to constitute a conspiracy to commit an offense under 18 U.S.C. Sec. 371, although the government has the burden of proof as to what amounts to an agreement to do so. If there is an agreement at any time during the continuing commission of the offense which is evidenced by the government's proof, this is sufficient. United States v. Zuideveld, 316 F.2d 873, 878 (7 Cir. 1963).

As our Court stated in *Zuideveld, supra,* at page 878:

"The common design is the essence of the conspiracy. This may be shown by proof of concert of action in the commission of an unlawful act from which a plan, common design or an agreement can be inferred. United States v. Bucur, 7 Cir., 194 F.2d 297 (1952); United States v. Nelson, 7 Cir., 185 F.2d 758, 759 (1950) . . . (citing cases)."

In Hernandez v. U. S., 300 F.2d 114 (9 Cir., 1962), the court there stated on page 121: "Under the general law of conspiracy, the common course of conduct between the defendant and a third person need not be based upon an express agreement—tacit understanding is enough. . . . Once the existence of a common scheme is established, very little is required to show that a defendant became a party—'slight evidence may be sufficient to connect the defendant with it.' Nye & Nissen v. U. S., 168 F.2d 846, 852 (9 Cir., 1948), affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949)." See also Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

In the case at bar, the argument by defendant that no conspiracy existed and that the government failed to prove a conspiracy between the concerted individuals seems specious at best. Although Theodis Wright was dismissed from the indictment prior to trial, Freddie Wood and Wright accompanied defendant on all of his excursions to the Wisconsin Dells area attempting to pass the stolen money orders. Furthermore, the government expert testified that in his opinion, Wood endorsed various money orders in perpetration of their scheme. The indictment charging the defendant also read that other unnamed co-conspirators may exist. We believe even if Wood was eliminated from the scheme, Eigland would qualify as an unindicted conspirator with defendant Robinson.

■ We hold that in this case the evidence clearly established a conspiracy for it was shown by the government that Robinson and his pals came to a

---

1. While Robinson was changing into his jail uniform after his arrest, a library card in the name of S. D. Owens fell out of his sock.

mutual understanding to accomplish unlawful acts. No formal agreement is required.

■ Defense counsel argued on appeal that a motion to suppress hearing on the evidence secured under the search warrant was improperly denied by the District Judge notwithstanding the fact that the motion was made in the afternoon of the second, and last day of trial. The government opposed the motion on the grounds of timeliness. The attorneys for the defendant argued that they were unaware of the contents of the warrant until a copy of the warrant and supporting data had been supplied them on the morning of the second day of trial. Yet, defendant Robinson had been furnished a copy of the warrant upon its execution, fifteen months before trial. From the record it appears no request was made by defense counsel for these documents until the end of the first day of trial.

Rule 41(e), F.R.Cr.P. provides that a motion to suppress shall be made " . . before trial or hearing unless opportunity therefor did not exist or the defendant was unaware of the grounds of the motion, but the court in its discretion may entertain the motion at the trial or hearing".

Defendant's two attorneys were well experienced in criminal defense cases and they well knew that pursuant to the applicable rules of discovery they could examine the search warrant any time upon request to do so. We are of the opinion that defense counsels failed to have the warrant in their possession for no other reason than their own inadvertence.

Here there was no showing of surprise or other mitigating circumstance which might have justified an untimely hearing on the defense motion. We hold there was no abuse of discretion on the part of the trial court in denying the said motion. See: Zachary v. United States, 275 F.2d 793 (6 Cir., 1960).

■ Defendant argues that the S. D. Owens library card and the stolen postal money orders seized from the car were seized as the result of an illegal arrest and pursuant to a warrant based on that illegal arrest; that the officers had no probable cause to effect an arrest as required by Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

Defendant Robinson was detained by Sheriff O'Dell after the officer had received an all points bulletin based upon the report of a known person on the same day as defendant was apprehended. Defendant was detained in Adams, Wisconsin, twenty-five miles distant from Wisconsin Dells where the bulletin had issued, in a car of the color and license number as indicated in the bulletin. Furthermore, before the arrest of the defendant and his friends, the deputy observed in open view in the locked car a postal money order in the visor. Pertinent is the fact that the police bulletin informed the Adams Sheriff's Department that the people in the described car were suspected of attempting to pass a stolen postal money order.

We are of the opinion that defendant's arrest at the Sheriff's office, when the officers were possessed of the knowledge hereinbefore discussed, was based on the requisite probable cause, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and that sufficient corroborating circumstances were present to support the information given by the police bulletin in order to effect a probable cause arrest. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

The order and judgment of conviction of the District Court is

Affirmed.