**UNITED STATES of America, Appellee,**

**v.**

**Robert G. MACKEDON, Jr.,
Defendant, Appellant.**

**No. 77–1093.**

United States Court of Appeals,
First Circuit.

Sept. 9, 1977.

**104**

Edward F. Haber, Boston, Mass., by appointment of the Court, for defendant, appellant.

Alan D. Rose, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, LAY * and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant and one Lessard were tried for conspiracy and possession and sale of stolen U. S. Treasury checks. Lessard pleaded guilty in the middle of a three day trial. On the third day, tape recordings of conversations between Lessard and a government informer and cooperator, Lodge, were introduced into evidence. One tape contained an exchange in which Lessard told Lodge what to do with some checks returned and money paid according to a price Lessard had negotiated. The two could not readily agree on a convenient meeting place. Lessard finally said, ". . . just give it [money and returned checks] to Bob, 'cause it belongs to him anyway, you know." Appellant's first name is Robert. Appellant objected and the jury was immediately given a "Honneus" instruction, following our prescription in *United States v. Honneus*, 1 Cir., 508 F.2d 566, 577 (1974).[1]

At the conclusion of the evidence, the court in its charge to the jury changed its formulation. It said that the jury could use "statements by Lessard made out of the presence of [appellant] . . . in a preliminary way in determining whether Lessard was part of a conspiracy with somebody" but that "[i]n considering whether [appellant] was a member of the same conspiracy, you must consider only the evidence as to his acts and statements." Only if appellant was so found to be a member of the conspiracy could Lessard's hearsay statements be used against appellant. The court, in colloquy with counsel, expressed its view that the Lessard declaration was admissible to prove that Lessard was in a conspiracy with somebody, "Bobby" not being a positive identification. Counsel for appellant argued that, since there had never been a suggestion of a conspiracy other than between Lessard and appellant, it was

---

* Of the Eighth Circuit, sitting by designation.

1. This required that, when the extrajudicial statement of an alleged coconspirator was offered, the jury be promptly told that the existence of the conspiracy and a defendant's participation in it must be established by independent non-hearsay evidence before any out of court statement by the co-conspirator could be used against the defendant.

prejudicial to tell the jury to consider the declaration on the issue of conspiracy vel non, but to ignore it on the issue of appellant's membership in the conspiracy.

Appellant appeals from the judgment of conviction on the basis of this instruction. He first argued, in his main brief, that, since the new Rules of Evidence were in effect at the time of his trial, the court was required by our opinion in *United States v. Petrozziello*, 1 Cir., 548 F.2d 20 (1977), to determine that the evidence of conspiracy and of defendant's membership in it reached at least the level of a preponderance. Appellant claimed that, because of the vulnerable status of credibility of Lodge, the key witness, the court did not and could not have found the evidence to be preponderating.[2] Thus, under *Petrozziello*, which appellant argued was retroactive, the court had failed to apply the co-conspirator exception correctly.

■ In his reply brief, appellant does not contest the government's argument that *Petrozziello* should not be applied retroactively.[3] We think this concession was well founded. In *Petrozziello*, we said that "[w]ithout the benefit of an appellate decision on the issue, the judge's use of the traditional standard was not plain error." *Id.* at p. 23. Indeed we now go farther and say that for cases tried between the effective date of the new Rules of Evidence, July 1, 1975, and the date of our decision in *Petrozziello*, January 21, 1977, a district court would not have committed reversible error if it applied either our *Honneus* approach or the new Rules accompanied by a determination from all the evidence that it "is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Id.*

■ Appellant, however, now bases his case on the court's alleged failure to follow *Honneus*, by admitting the statement of the alleged co-conspirator, Lessard, implicating appellant in the conspiracy in order to prove that there was a conspiracy between Lessard and "somebody". This does seem to us to violate the teaching of *Honneus* that "the conspiracy itself and each defendant's participation in it must be established by independent non-hearsay evidence." 508 F.2d at 577.[4] We therefore are compelled to review the evidence to see if appellant's "substantial rights" were affected. *Honneus, supra*, 508 F.2d at 577.

Lodge, the government witness, testified to having been with appellant and Lessard on four occasions. On December 2, 1975, at

---

2. It is admitted by the parties that on this issue the new Rules of Evidence were not mentioned. Lodge was shown, by both the government and the defense, to have an extraordinarily long record of crimes, many of them dealing with falsifying instruments. He was shown to have expected leniency in other current charges because of his cooperation with the government, although no proof of a "deal" was elicited. He also admitted that his motive was to avenge himself for a wrong he thought both Lessard and appellant had done him and that he would lie to stay out of jail. When defense counsel moved for a judgment of acquittal on the ground that Lodge was too incredible, the court replied, "I don't find him so incredible. I find him considerably less admirable." This seems consistent with a finding, acceptable before new rule 104(a), (which requires that a preliminary question of "admissibility of evidence shall be determined by the court") that there was a prima facie case sufficient to go to the jury. Arguably it was stronger. We do not understand why a court would be barred from finding a preponderance simply because all or

most of the prosecution's case depends upon the credibility of one witness, but this question has become irrelevant in this appeal.

3. In *Petrozziello*, we considered the issue whether the evidence preponderated in favor of the existence of a conspiracy to underscore that the appellant there could claim no prejudice. We did the same in *United States v. Martorano*, 557 F.2d 1 (1st Cir. 1977) because it seemed that the district court may have followed, to a limited extent, the approach adopted by the new federal rules and because we were uncertain that the district court ruled correctly under the pre-federal rules practice.

4. The government has feebly argued that since a proper *Honneus* instruction was given when the tapes were admitted, it is irrelevant that the final instruction was incorrect. Such logic has the merit only of novelty; the conventional wisdom that the last word is at least as important as the first still has validity.

Lessard's home, appellant took two brown envelopes from a coat pocket, extracted a Treasury check, and asked Lodge if he would have any trouble cashing them. On December 3 at the Wayside Cafe, Lodge talked to appellant in Lessard's presence and said he had a buyer for the checks. Appellant asked what the buyer did for a living and what he was willing to pay. When told that he would receive $1000 for every $4000 of checks, appellant said that he and Lessard would receive $500 from each $1000 received and that Lodge would receive $125 from each $500. Appellant inquired if the buyer would take "the whole $11,000".

Later the same day Lodge again saw appellant outside the Wayside Cafe and told him the buyer wished to see a sample check. Appellant entered the Cafe, told Lodge to stay outside, came out immediately with Lessard, opened his shirt, gave Lodge a brown package, and told him to leave town. Lessard said that if more checks were needed, he could get them. On December 4 Lodge and a government agent drove to the Wayside Cafe. Lodge entered the Cafe, spoke to Lessard and appellant, said he had the money and checks refused by the buyer in his car. Appellant told him to put the money and checks in his, appellant's car. Lodge returned to his car, got an envelope from the agent and entered appellant's car. He sat in the passenger's seat in front. Lessard was in the back seat. Appellant told Lodge to put the envelope on the seat between them.

Agents Sullivan and Carlon testified that they saw appellant and Lessard leave the Cafe and enter appellant's car. The arrest was made immediately. A fingerprint expert testified that he had made a positive identification [5] of appellant's fingerprint on an adding machine tape, which had been wrapped around 50 checks found in the envelope given by Lodge to appellant. No testimony was submitted by the defense.

5. The expert had established identity for 15 points or features of the fingerprint. He testified that generally establishing identity for 9

In the context of all this evidence we cannot say that the admission of Lessard's statement, although hearsay, could have had any appreciable effect in proving either a conspiracy or appellant's participation in it. We hold that none of appellant's substantial rights was affected by the final defective instruction.

*Affirmed.*

points would be sufficient for a positive identification.