**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Margarita Martinez de ORTIZ, Defendant–Appellant.**

**No. 88–1760.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1989.

Decided Aug. 16, 1989.

Eric J. Klumb, R. Jeffrey Wagner, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

John Landa, Kenosha, Wis., Andrew Mishlove, Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Defendant Margarita Martinez de Ortiz was charged in a superseding indictment with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count I), and

---

[*] The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count II). Linda Cabeza and Alberto Cabeza were also charged in the indictment as co-conspirators.

Ortiz was tried separately. After the government presented its case and again after all the evidence was heard, Ortiz moved for a judgment of acquittal, pursuant to Fed.R.Crim.P. 29(a). A ruling on her motions was deferred and never made. Ortiz also moved to exclude the testimony of alleged co-conspirator statements previously made by Linda Cabeza, who did not testify, on the ground that there was not sufficient evidence tying Ortiz to the conspiracy, although she conceded that there was a conspiracy. Judge Curran concluded that the statements were admissible under Fed.R.Evid. 801(d)(2)(E) and denied Ortiz's motion.

The jury found Ortiz guilty of conspiracy but not guilty of possession of cocaine with intent to distribute. She subsequently filed a motion for a judgment of acquittal, arguing, among other things, that her conviction was based on insufficient evidence. Judge Curran denied the motion and sentenced Ortiz to ten years in prison and fined her $5,000. On appeal, she argues that there was insufficient evidence to support her conviction and that the district court erroneously denied her motion to exclude evidence of statements previously made by Linda Cabeza. The government contends that Judge Curran's jury instruction for conspiracy was wrong. We affirm Ortiz's conviction and reject the government's argument with respect to the jury instruction.

## BACKGROUND

The government's case was primarily based on the testimony of Kathleen Jaeger, an informant who, along with her boyfriend Mario Stein, was awaiting sentencing on federal cocaine conspiracy charges. She had pled guilty on August 14, 1987 and agreed to cooperate by trying to arrange further sales with Linda Cabeza and Alberto Cabeza, both of whom had allegedly supplied Mario Stein with cocaine between December 1984 and March 1987. Stein lived in Milwaukee and the Cabezas lived in Miami.

In August 1987 Jaeger taped a phone conversation she had with Linda Cabeza during which Cabeza identified three potential sources for cocaine: "Rafael," "Lydia" and "Margarita." After Linda did not succeed in working out an arrangement with Rafael or Lydia, she concentrated on Margarita (Ortiz). Linda told Jaeger that she and Mario Stein had previously obtained good cocaine through Margarita two years earlier and that she was going to contact Margarita to see if Margarita's boyfriend had cocaine. Several days later, Linda told Jaeger that she had made a connection through "the person I told you I was gonna talk to." Linda was in New York or Miami during these conversations.

Linda Cabeza spoke with Jaeger several times after that and told Jaeger that Margarita was coming as the "guarantee for everything." As planned, Jaeger drove to Chicago on October 1, 1987 and picked up Linda Cabeza and Ortiz at O'Hare International Airport and drove to a Chicago motel. Cabeza and Ortiz had travelled by plane from Miami.

Ortiz only speaks Spanish and Jaeger only speaks English. A conversation took place in the car and Linda Cabeza translated for both women. Cabeza told Jaeger that she and Ortiz were tired and wanted to go to a motel and that they were expecting a phone call which could lead to the acquisition of another five to ten kilos of cocaine in Chicago. At the same time, Alberto Cabeza was to be driving eight kilos to Chicago from Miami. Five of those kilos were to be for Jaeger and another three for someone else in Chicago.

After arriving at the motel, Ortiz went to sleep while Linda Cabeza and Jaeger went out for lunch and discussed the deal. When Ortiz awoke, all three had another conversation during which time Linda explained why she was initially unable to secure cocaine from Rafael or Lydia. Linda also told Jaeger that Ortiz had previously given Lydia a kilo of cocaine. Jaeger testified that she was able to hear Ortiz

use the words "Lydia" and "kilo," which are the same in English as in Spanish. Later that day, after Ortiz awoke from a second nap, Jaeger asked Linda Cabeza to ask Ortiz whether or not Jaeger could have all eight kilos from Alberto. After speaking with Ortiz, Linda Cabeza told Jaeger that Ortiz thought Jaeger was nice and that she could have all eight kilos.

Later that evening, the arrangement was planned. Alberto Cabeza was to arrive in Chicago and the three women would drive to Kenosha, Wisconsin and get a motel room while Alberto would follow with five kilos. Alberto would transfer the cocaine to Jaeger who would sell it quickly, return to the hotel and give the money to Linda, Alberto and Ortiz. A down payment was not needed. Ortiz would fly back to Miami with half the money.

As planned, Alberto arrived at the Chicago motel on October 1, 1987 at 11:30 p.m. Prior to leaving, Linda Cabeza told Jaeger that she would get five kilos but the other three were going to be put into a safe in the Chicago motel room. Jaeger did not see anyone place cocaine in the safe. During the early morning of October 2nd, Jaeger drove to Kenosha with Ortiz and Linda, without checking out of the Chicago motel. Jaeger left Ortiz and Linda at the Kenosha motel room and met Alberto in a parking lot where she received five kilos. Soon thereafter, Alberto, Linda and Ortiz were arrested. Later that day, FBI agents searched the Chicago motel room and seized three kilos from a safe in the room. There was no testimony that Ortiz ever handled the cocaine or was present when it was displayed.

Ortiz objected to the admission of previous statements made by Linda Cabeza. These statements included the taped telephone conversations between Cabeza and Jaeger as well as Jaeger's testimony regarding Cabeza's alleged translations of Ortiz's statements during several conversations among Ortiz, Cabeza and Jaeger. Ortiz did not contest that a conspiracy existed or that Cabeza's statements were made in furtherance thereof, but argued that she (Ortiz) was not a member of the conspiracy.

Judge Curran found that the government established by a preponderance of evidence that Ortiz was a member of the conspiracy and that the statements were admissible under Fed.R.Evid. 801(d)(2)(E).

At the close of the government's case, Ortiz renewed her motion to exclude testimony but this was denied. While Judge Curran admonished the government several times that its case against Ortiz was very weak, he deferred ruling on Ortiz's motion for judgment of acquittal also made at the close of the government's case. Thereafter, Ortiz testified in defense that she was travelling with Linda Cabeza to Chicago and that they along with another friend of Linda Cabeza were going to do some shopping. Ortiz's post-conviction motion for a judgment of acquittal based on insufficient evidence was denied.

## ANALYSIS

### 1. Jury Instruction

The government contends that the district court's conspiracy instruction was erroneous. Although Ortiz was convicted of conspiracy and she has not challenged the instruction on appeal, we need to resolve the issue in light of Ortiz's argument that insufficient evidence supported her conviction and that there exists an inconsistency within the Eastern District of Wisconsin regarding conspiracy instructions which was brought to our attention at oral argument.

Judge Curran instructed the jury as follows:

In order to establish the offense of conspiracy charged in count one of the indictment, the government must prove these elements beyond a reasonable doubt:

1. That the alleged conspiracy existed; and

2. That the defendant knowingly and intentionally became a member of the conspiracy.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be estab-

lished even if its purpose was not accomplished.

In determining whether the alleged conspiracy existed, *and whether a particular defendant became a member of the conspiracy,* you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

*In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant.*

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant.

Record at 866–67 (emphasis added).

According to the government, in light of *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the jury should have been instructed that in determining whether or not Ortiz was a member of the conspiracy, in addition to determining whether or not a conspiracy existed, it could consider evidence of acts or statements by all alleged conspirators, not just those by Ortiz. The government's tendered instructions differed from Judge Curran's instructions in that they did not include the following statement, which was included in Judge Curran's instructions: "In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant."

We note initially that the instructions given by Judge Curran were inconsistent. He instructed the jury that:

[i]n determining whether the alleged conspiracy existed, *and whether a particular defendant became a member of the conspiracy,* you may consider the actions and statements of *all* the alleged participants.... In determining whether the defendant became a member of the con-

spiracy, you may consider *only* the acts and statements of that particular defendant.

Record at 866–67 (emphasis added). Even though Judge Curran's final conspiracy instruction was that the jury should limit its consideration to evidence of Ortiz's acts or statements, the jury could have been confused as a result of his previous instruction. *United States v. Mackedon,* 562 F.2d 103, 105 n. 4 (1st Cir.1977).

The Seventh Circuit's pattern jury instructions for conspiracy include the following:

In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

\*　　\*　　\*　　\*　　\*　　\*

In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant.

*Federal Criminal Jury Instructions of the Seventh Circuit* § 5.11 (1980). Devitt & Blackmar's proposed jury instructions for conspiracy also make a clear distinction between what the jury should consider to establish the existence of a conspiracy versus a particular defendant's membership in the conspiracy:

In determining whether a conspiracy existed, the jury should consider the actions and declarations of the alleged participants. However, in determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members.

E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 27.05 (1977). In Mathes, *Jury Instructions And Forms For Federal Criminal Cases* § 13.05 (1961), the same distinction is made:

In determining whether or not a defendant, or any other person, was a member of a conspiracy, the jury are not to consider what others may have said or done. That is to say, the membership of a defendant, or any other person, in a conspiracy must be established by evidence as to his own conduct, what he himself said or did.

The Supreme Court in *Bourjaily* determined that the level of proof required before *admitting* co-conspirator statements under Fed.R.Evid. 801(d)(2)(E) is a preponderance of evidence and that the evidence to be considered by the court in determining whether there is a threshold showing of a conspiracy such that the statements are admissible can include the alleged hearsay statements in addition to other independent non-hearsay evidence. 483 U.S. at 175–81, 107 S.Ct. at 2778–82. The Court held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Id.* at 181, 107 S.Ct. at 2782.

The petitioner in *Bourjaily*, relying on *Glassner v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), argued that the question of admissibility must be based on evidence which does not include the alleged hearsay statements, since otherwise they would result in a "bootstrap" effect, i.e., while a court decides whether or not the statements are admissible, it considers the statements equally with other admissible evidence. The Court rejected that argument, stating that "[t]o the extent that *Glassner* meant that courts could not look to the hearsay statements themselves for any purpose, it has clearly been superseded by [Fed.R.Evid.] 104(a)." *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2782. The Court stated, however, that it need not resolve the question of whether or not the admissibility of such hearsay statements can be based solely on consideration of the hearsay statements. *Ibid.*

In addition, the Court noted that the standard for admissibility of statements under the Federal Rules of Evidence does not necessarily equal the burden of persuasion ultimately required to win the case, especially in a criminal case where the burden of persuasion is beyond a reasonable doubt. *Id.* at 175, 107 S.Ct. at 2778. More importantly, the Court did not say that proof of one's membership in a conspiracy *for the purpose of a conviction* may be based on evidence other than or in addition to that defendant's own statements and acts. Indeed, the Court suggested that this was not the case since the standards for admissibility of evidence and for a criminal conviction are "unrelated." *Ibid.* The standard of proof was not in issue in *Bourjaily*, only the standard for admitting evidence.

■ Accordingly, the rule in this circuit remains that in determining whether or not a defendant was a member of a conspiracy the jury must be instructed that it can only consider evidence of what the defendant did or said. Another member of a conspiracy may not make the defendant a member of the conspiracy simply by saying that he or she was a member. Obviously, determining whether or not a defendant was a member of a conspiracy must follow a finding that a conspiracy existed. And determining whether or not a conspiracy existed can be based on evidence of acts of or statements by all alleged conspirators. However, a particular defendant's membership in the conspiracy, if any, must be based on evidence limited to that defendant.[1] Ortiz concedes that a conspiracy to distribute cocaine existed. Accordingly, our review of the sufficiency of the evidence with respect to Ortiz's conviction for conspiracy will be based only on evidence of what she did or said.

Ortiz did not challenge the conspiracy instruction during the trial. Failure to raise an objection to an instruction at trial would generally preclude review on appeal absent "plain error." *United States v. Conn*, 769 F.2d 420, 425 (7th Cir.1985). *See also* Fed.R.Crim.P. 30. In addition,

---

**1.** Of course, evidence of what a particular defendant did or said must be considered in its full context. For example, adoptive admissions by one defendant are properly considered in conjunction with the statements by others which have been adopted.

Ortiz has not raised an objection to the instruction on appeal. On the other hand, the government objected to the instruction at trial and has raised the issue once again on appeal. It would make little sense to review the government's objection to the same conspiracy instruction and not consider any error in the instruction with respect to Ortiz. As discussed below, we do not find that the inconsistency in Judge Curran's instruction was plain error. *See United States v. Markowski*, 772 F.2d 358, 363 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986).

### 2. Hearsay Testimony

Ortiz objected to the admission of testimony of statements previously made on the ground that they were inadmissible hearsay. Fed.R.Evid. 801(d)(2)(E) provides as follows:

(d) *Statements which are not hearsay.* A statement is not hearsay if—

\* \* \* \* \* \*

(2) *Admission by party-opponent.* The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and furtherance of the conspiracy.

Co-conspirator statements are admissible under 801(d)(2)(E) if the government proves "by a preponderance of competent evidence ... (1) that the conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the statements were made during the course of and in furtherance of the conspiracy." *United States v. Van Daal Wyk*, 840 F.2d 494, 496 (7th Cir.1988) (footnote omitted).

▉ Ortiz objected to the admission of taped telephone conversations between Cabeza and Jaeger during which Cabeza allegedly inculpated Ortiz and to the admission of Cabeza's alleged translations of Ortiz's statements during conversations in the motel room. Judge Curran found that the government had shown by a preponderance of the evidence that Ortiz and Cabeza were members of the conspiracy to distribute cocaine and that these statements were made in the course and furtherance of the conspiracy. Jaeger's testimony concerning

Ortiz's own use of the words "Lydia" and "kilo" does not pose a hearsay problem. These statements are admissions, *see* Fed. R.Evid. 801(d)(2)(A), to the extent that they would otherwise constitute hearsay.

As noted above, the Supreme Court in *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987), held that the trial court's decision to admit co-conspirator statements under Rule 801(d)(2)(E) may be based upon a consideration of the hearsay statements and other evidence. *See also Van Daal Wyk*, 840 F.2d at 496 n. 1. The district court followed the rule of *Bourjaily* and *Van Daal Wyk*. Therefore, Ortiz's challenge to the admissibility of Cabeza's statements based on the "bootstrapping" argument discussed above and rejected in *Bourjaily* must fail.

▉ Based on a review of all of the evidence presented by the government, we conclude that the statements Cabeza made on the telephone and her translations of Ortiz's statements were properly admitted under Rule 801(d)(2)(E). Ortiz's presence throughout the entire scenario and during the trips from Miami to Chicago to Wisconsin is not logically explained other than by the fact that she was a member of the conspiracy and that she and Cabeza were co-conspirators. Ortiz's presence was most likely necessary to effect the purchase without a down payment. Certainly the government established by a preponderance of all the evidence that Ortiz and Linda Cabeza were members of the conspiracy and that Cabeza's own statements and translations of Ortiz's statements were made during the course and in furtherance of the conspiracy.

In sum, Judge Curran's finding that the statements in issue were admissible under Fed.R.Evid. 801(d)(2)(E) is not clearly erroneous. *Van Daal Wyk*, 840 F.2d at 496. Because of our resolution of this issue, we need not address the government's alternative argument, raised for the first time on appeal, that translated statements made by Cabeza for Ortiz are admissions and are thus admissible under Fed.R.Evid. 801(d)(2)(C) or (D).

### 3. Sufficiency of Evidence

■ The district court's failure to rule on Ortiz's Fed.R.Crim.P. 29(a) motion for judgment of acquittal at the close of the government's case was error and we must determine whether it was harmless. *United ed States v. Reifsteck*, 841 F.2d 701, 703 (6th Cir.1988). The error is harmless if, viewing the evidence presented up to the close of the government's case in a light most favorable to the government, there was sufficient evidence such that a reasonable jury could find Ortiz guilty beyond a reasonable doubt. *United States v. Weed*, 689 F.2d 752, 756 (7th Cir.1982). We repeat that the evidence to be considered in reviewing Ortiz's conviction is limited to evidence of what she did or said. This includes direct and circumstantial evidence. *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988).

As previously indicated, Ortiz does not contest that there was a conspiracy to distribute cocaine. Nor could she since the evidence on this point was overwhelming. Instead, she claims that she was not a member of the conspiracy. Ortiz describes the government's evidence against her as follows: she traveled to Illinois and Wisconsin with the real conspirators, the taped conversations between Jaeger and Linda Cabeza were equivocal and the reliability of Linda Cabeza's translations of Ortiz's statements is questionable. In addition, the cocaine arrangements were made between Linda Cabeza and Jaeger. Moreover, there was no evidence that Ortiz was present when cocaine was displayed or transferred or that she knew where it was or had access to it. In fact, she slept on two occasions when arrangements were made.

It is clear that the government's case against Ortiz was not overwhelming. However, Ortiz's interpretation of the evidence against her is, naturally, biased in her favor while we must view the evidence in a light most favorable to the government. Her travel with the Cabezas and Jaeger was not logically explained as a personal trip, especially considering the extensive travel involved and the late night hours during which they travelled and checked into motels. In addition, Ortiz made inculpatory admissions and she engaged in conversations where this deal and previous drug transactions were discussed.

"Once a conspiracy is shown to exist[,] evidence that establishes a particular defendant's participation beyond a reasonable doubt, although the connection between defendant and conspiracy is slight, is sufficient to convict." *United States v. Xheka*, 704 F.2d 974, 988 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). However, "mere association, knowledge or approval of a conspiracy" does not establish membership in it. *Ibid.* While a defendant's participation in the conspiracy need not have been substantial in order to convict but may have been slight, the evidence must establish the defendant's knowing participation in the conspiracy beyond a reasonable doubt. *See Federal Criminal Jury Instructions of the Seventh Circuit* § 5.11 (1980).

■ Ortiz's actions constitute more than mere presence or mere association. The evidence against Ortiz was sufficient such that the jury could reasonably conclude beyond a reasonable doubt that she knew the purpose of the conspiracy and knowingly participated in it, even if in a relatively minor way. *United States v. Abayomi*, 820 F.2d 902, 906 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). *See also United States v. Elledge*, 723 F.2d 864, 866 (7th Cir.1984) (government need not prove that defendant charged with conspiracy knew all details of the agreement, just that he knew its essential purpose). Accordingly, while the trial court must find that the government, weighing the evidence most favorably to it, has established a prima facie case, before the defendant is obliged to present defense evidence, the government here did present such evidence and Judge Curran's failure to rule was harmless error.

■ With respect to the instructions, based on the evidence establishing Ortiz's membership in the conspiracy, we find that Judge Curran's inconsistent instructions

did not have a "probable impact on the jury's finding that [Ortiz] was guilty" and thus did not result in plain error. *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). *See also United States v. Markowski*, 772 F.2d 358, 363 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986).

■ Finally, Ortiz contends that the jury's verdict with respect to Count II is inconsistent with the jury's verdict with respect to Count I. One who is convicted of being a member of an illegal conspiracy is liable for the acts committed in furtherance thereof. The evidence here was undisputed that a conspiracy to distribute cocaine existed and that a cocaine transaction took place as planned. Judge Curran instructed the jury that a conspirator is liable for the substantive acts of her partners.

■ Given the evidence with regard to possession, Ortiz's conviction for conspiracy to distribute cocaine seems inconsistent with her acquittal on charges of possession with intent to distribute cocaine. It may reflect the fact that the jury also found the government's case against Ortiz weak and chose to be lenient. More important, a conviction for conspiracy to distribute cocaine and an acquittal for possession with intent to distribute is not legally inconsistent and we need not read the minds of the jury to determine the basis for any inconsistency.

## CONCLUSION

We conclude that co-conspirator statements were properly admitted under Fed. R.Evid. 801(d)(2)(E) and that sufficient evidence supported the defendant's conviction for conspiracy. We reject the government's argument with respect to jury instructions for conspiracy. A jury's determination of whether or not a defendant was a member of an illegal conspiracy, given a finding by the jury that such a conspiracy existed, must be based on consideration of evidence which is limited to what the particular defendant did or said. Finally, the district court's inconsistent jury instructions on conspiracy did not result in plain error.

AFFIRMED.

EASTERBROOK, Circuit Judge, concurring.

Standards of review do not matter in this case; the evidence against Martinez de Ortiz is sufficient no matter what the formula. I therefore concur in the court's judgment and join all of its opinion except the statement that "[o]nce a conspiracy is shown to exist[,] evidence that establishes a particular defendant's participation beyond a reasonable doubt, although the connection between defendant and conspiracy is slight, is sufficient to convict", page 522, quoting from *United States v. Xheka*, 704 F.2d 974, 988 (7th Cir.1983). Although similar expressions dot our recent opinions, we should reexamine rather than reiterate this approach.

*Xheka* gives one of the two variations on a theme. See, e.g., *United States v. Grier*, 866 F.2d 908, 924 (7th Cir.1989); *United States v. Vega*, 860 F.2d 779, 795 (7th Cir. 1988); *United States v. Alvarez*, 833 F.2d 724, 728 (7th Cir.1987), following *Xheka*. The other version goes: "Once the existence of a conspiracy is proven only very slight evidence is needed to establish a defendant's membership in the conspiracy." *United States v. Douglas*, 874 F.2d 1145, 1152 (7th Cir.1989). See also, e.g., *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir.1988); *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987); *United States v. Gironda*, 758 F.2d 1201, 1217 (7th Cir.1985). A few cases quote both versions. E.g., *United States v. Zambrana*, 841 F.2d 1320, 1343, 1346 (7th Cir.1988); *Nesbitt*, 852 F.2d at 1509, 1510.

"Slight connection" language first appeared in this circuit in *Xheka* (1983), and "slight evidence" makes its bow in *United States v. Robinson*, 470 F.2d 121 (1972). Searching for "slight evidence" in a criminal case is a recent rather than hoary phenomenon, and none of our cases justifies the substitution of "slight" for "substantial"—a word with the force of time and authority. E.g., *Glasser v. United States*,

315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

What do these formulas mean? They could mean that once **A** and **B** conspire, "slight evidence" or "slight connection" is enough to convict **C** of the same crime, an intolerable proposition. They could mean that evidence may be sufficient to establish guilt beyond a reasonable doubt even though "slight", thus watering down the reasonable-doubt standard. They could mean that an appellate court must keep in mind the possibility that evidence may be slight quantitatively although substantial qualitatively—that a single piece of evidence may be enough in context, an unexceptionable proposition. They could mean that "slight" evidence of participation in the conspiracy is enough to admit other evidence, but that what comes in must be substantial enough to support a finding beyond a reasonable doubt. Some cases use "slight evidence" language to resolve evidentiary questions, e.g., *United States v. Van Daal Wyk,* 840 F.2d 494, 498–99 (7th Cir.1988), but "slight" evidence cannot be enough given *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987), which holds that the preponderance standard governs questions of admissibility.

The *Xheka* version could mean that if someone joins the conspiracy, "slight" activity to accomplish its objectives is enough, that peripheral conspirators commit the crime no less than the mastermind. As the majority today puts it: "[w]hile a defendant's participation in the conspiracy need not have been substantial in order to convict but may have been slight, the evidence must establish the defendant's knowing participation in the conspiracy beyond a reasonable doubt." Page 522. This interpretation follows the definition of the crime (agreement plus one overt act) and is not troubling. That we have to tease it out of a formula with dubious alternative meanings, though, is a mark against its use.

And the other variation—"Once the existence of a conspiracy is proven only very slight evidence is needed to establish a defendant's membership in the conspiracy" —cannot be massaged to yield a meaning with which we should want to live. It says that "very slight evidence" is enough to send a person up the river. Maybe we could torture the phrase until it confessed to a constitutionally acceptable meaning, but why bother? Far better to throw it overboard and adopt a formula that clearly explains what we are about. The Fifth Circuit did just this in a unanimous en banc opinion. *United States v. Malatesta,* 590 F.2d 1379 (5th Cir.1979). See also Note, *Connecting Defendants to Conspiracies: The Slight Evidence Rule and the Federal Courts,* 64 Va.L.Rev. 881 (1978) (recommending this course). Although *Xheka* came after *Malatesta,* and our "slight evidence" cases have blossomed recently, our circuit has never cited *Malatesta,* never justified these approaches, never explained how either formula can be reconciled with the reasonable-doubt standard.

Nothing we do as judges in criminal cases is more important than assuring that the innocent go free. Few innocent persons reach us: prosecutor, grand jury, trial judge, and petit jury have sifted the pool of suspects. Some of the defendants who come here are innocent, but usually we can't tell which. False accusations of crime must be caught by prosecutor and petit jury; we cannot reverse a conviction just because the main witnesses may have been confused or, worse, liars. Now and again, however, a case arrives in which something transparently has gone wrong, and we must act. Every time we reverse a conviction on account of insufficient evidence, we avert many more; the standard of review in this court establishes the benchmark that guides conduct elsewhere.

"Conspiracy" is a net in which prosecutors catch many little fish. We should not go out of our way to tighten the mesh. *Grunewald v. United States,* 353 U.S. 391, 404, 77 S.Ct. 963, 973, 1 L.Ed.2d 931 (1957). Prosecutors have many legitimate advantages in the criminal process. Defendants' great counterweight is the requirement

that the prosecution establish guilt beyond a reasonable doubt. References to "slight evidence" and "slight connection" reduce the power of that requirement.