UNITED STATES of America,
Plaintiff–Appellee,

v.

Alexander **DURRIVE,**
Defendant–Appellant.

No. 89–1434.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1989.

Decided May 15, 1990*.

---

**5.** Since Sawyers' sentence was within the guideline range, he is actually precluded from appealing. *See* 18 U.S.C. § 3742.

\* Pursuant to Circuit Rule 40(f), this opinion has been circulated among all active judges of this court in regular active service. No judge favored a rehearing en banc on the issue of supplanting previous versions of our standard of review for assessing the sufficiency of the evidence linking a defendant to a conspiracy with a "substantial evidence" standard of review.

R. Jeffrey Wagner, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Abraham Silverstein, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Alexander Durrive was indicted on two counts charging him with conspiring to distribute cocaine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2; and use of a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. A jury convicted Durrive on both counts and the district court sentenced the defendant under the Sentencing Guidelines ("Guidelines"). The first issue on appeal is whether the government presented sufficient evidence at trial to support the jury's guilty verdict. The second issue is whether the district court properly enhanced Durrive's offense level under Guidelines § 2D1.1(b)(1) by two levels because he possessed a firearm while committing the offense. We affirm.

## I. FACTUAL BACKGROUND

In April 1987, Teresa Wielochowski traveled from Milwaukee, Wisconsin, to Miami, Florida, with Alberto and Linda Cabeza, two associates of Wielochowski's cocaine-distributing boyfriend, Fausto Zaffino. While in Miami, Wielochowski met Rene Rodriguez, a cocaine supplier for Zaffino. During the summer of 1987, Wielochowski saw Rodriguez during visits to New York and Miami. After Wielochowski's rendezvous with Rodriguez, Rodriguez would travel to Milwaukee to supply cocaine to Zaffino and the Cabezas. Rene Rodriguez introduced Wielochowski to a friend of his named "Alex" during one of Wielochowski's excursions to Miami.

In October 1987, federal authorities arrested Fausto Zaffino. Because Zaffino's cocaine distribution activities in Milwaukee ceased upon his arrest, Wielochowski had no contact with Rodriguez between the fall of 1987 and the late summer of 1988. In August 1988, Rodriguez repeatedly called Wielochowski on one of her two digital pagers. Wielochowski suspected that Rodriguez wished to perform an overture to a drug deal. Desiring to assist the arrested Zaffino, Wielochowski contacted the FBI and offered to cooperate in exchange for a possible reduction in Zaffino's sentence. On September 13, 1988, Wielochowski authorized the FBI to monitor and record her telephone conversations with Rodriguez.

In response to a page from Rodriguez, Wielochowski called Rodriguez on September 13 at a telephone number he used in Brownsville, Texas. Rodriguez informed Wielochowski that he intended to call his cocaine source immediately and would later travel to Miami to meet him. Telephone toll records indicated that directly after his conversation with Wielochowski, Rene Rod-

riguez called a Miami telephone number subscribed to under the name "Alex Rodriguez," 9310 Fountain Bleau Boulevard, Miami.

On September 22, 1988, Wielochowski called Rene Rodriguez at the Brownsville number to check on the progress of the drug deal. A woman who answered the phone told Wielochowski that Rene Rodriguez had gone to Florida and could be reached at telephone number (305) 551-9466, which was the number subscribed to under the name Alex Rodriguez.

Five days later, Wielochowski and FBI Special Agent David Shellenberger called Rene Rodriguez at the Miami number. Shellenberger represented that he was Wielochowski's timid but well-heeled partner. During the conversation, Rodriguez quoted Shellenberger a price of $18,000.00 per "watch" (a code word for a kilogram of cocaine). Agent Shellenberger and Wielochowski called the Miami number again later that day and spoke to both Rene Rodriguez and a man identifying himself as "Alex." Alex assured Shellenberger that he had "the merchandise" and encouraged Shellenberger to travel to Miami to examine it. In an attempt to allay Shellenberger's concern about being taken advantage of, Alex stated that Shellenberger could initially pay for half of the cocaine in Miami and then pay for the other half when it arrived in Milwaukee.

Later that afternoon, Shellenberger telephoned Alex from Milwaukee. Alex indicated that he was reluctant to send Rene Rodriguez to Milwaukee with three kilograms of cocaine without being paid first. Alex again cajoled Shellenberger to come to Miami to inspect the cocaine, and stated that "you're not gonna have to ... be scared because you're gonna be in my family's house with my two kids. I got two little babies and stuff, you know." After discussing prices with Rene Rodriguez, Shellenberger promised to call back when he decided whether he would travel to Miami.

Agent Shellenberger phoned the Miami number the following day and informed Alex that he was travelling to Miami on Friday, September 30, 1988, to meet with Rene Rodriguez and Alex. At 8:00 a.m. on Friday, September 30, 1988, Wielochowski called Miami and gave Rene Rodriguez the number and arrival time of the flight that Shellenberger was purportedly taking to Miami that day.

Approximately an hour and a half later, Agent Jeff Lang of the FBI's Miami office went to Apartment 305, 9310 Fountain Bleau Boulevard in Miami with a pair of arrest warrants. Agent Lang's entry into the apartment woke Rene Rodriguez from his slumber in the living room; Alex Durrive joined the pair from a rear bedroom. Durrive's girlfriend and his two children were also present. Durrive admitted that he lived in the apartment.

The agents discovered an envelope in plain view on a living room coffee table. The envelope was addressed to "Alex Durrive" at a Leisure City, Florida, address. Someone had written the flight information that Wielochowski had provided earlier that morning on the reverse side of the envelope. The agents seized numerous documents from Rene Rodriguez's wallet, including slips of paper bearing Wielochowski's beeper number, the names "Alex" and "Fausto," and the telephone number for Durrive's residence. In response to Agent Lang's query regarding the presence of weapons, Durrive directed the agent to a .357 magnum revolver in a closet. The arresting agents never conducted a full-scale search, and failed to discover any drugs in the apartment during the initial security search.

After reading him his *Miranda* rights, Agent Lang spoke with Alex Durrive for approximately three hours. Prior to Durrive's trial, Agent Lang listened to the recorded telephone conversations in which a man named "Alex" had participated. Lang testified at trial that he strongly believed that one of the voices on the tape belonged to Alex Durrive. While Wielochowski and Agent Shellenberger testified that they were unable to identify the voice on the tapes as being the same as Durrive's voice, the jury evidently found Agent Lang's testimony sufficient to support a finding that

Alex Durrive was the "Alex" who participated in the drug negotiations.

At trial, the government introduced a pair of Florida driver's licenses into evidence as additional proof of a link between Rene Rodriguez and Alex Durrive. One license was for Alex Durrive at 15135 SW 305 Terrace, Leisure City, Florida, and the second license was for Rene Rodriguez at the same address.

## II. SUFFICIENCY OF THE EVIDENCE

■■■ Durrive argued at trial and on appeal that while his association with conspirators may have been proved, his participation in the conspiracy was not. When evaluating a sufficiency of the evidence challenge, we " 'review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government.' " *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988) (quoting *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984)), *cert. denied,* —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *see also United States v. Herrero,* 893 F.2d 1512, 1531 (7th Cir.1990). In reviewing the evidence against Durrive, we must determine whether any rational trier of fact could have concluded that he was guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Muehlbauer,* 892 F.2d 664, 667 (7th Cir.1990); *United States v. Grier,* 866 F.2d 908, 922 (7th Cir.1989). We may overturn a verdict only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt. *Grier,* 866 F.2d at 923; *Nesbitt,* 852 F.2d at 1509. We have defined a conspiracy as "a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Whaley,* 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988); *see also Muehlbauer,* 892 F.2d at 667; *United States v. Reed,* 875 F.2d 107,

111 (7th Cir.1989). To sustain the charge of conspiracy to distribute cocaine, the government need only prove the existence of such a conspiracy and a participatory link with Durrive. *United States v. Missick,* 875 F.2d 1294, 1297 (7th Cir.1989); *United States v. Abayomi,* 820 F.2d 902, 905 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). A defendant's mere knowledge of, approval of, association with, or presence at a conspiracy is insufficient to establish the participation element. *See United States v. Troop,* 890 F.2d 1393, 1397 (7th Cir.1989); *Abayomi,* 820 F.2d at 906. In meeting its burden of proof, the government may use circumstantial evidence and, in fact, such evidence "may be the sole support for a conviction." *Nesbitt,* 852 F.2d at 1511; *see Troop,* 890 F.2d at 1397; *Grier,* 866 F.2d at 923.

■■■ In *United States v. Martinez de Ortiz,* 883 F.2d 515 (7th Cir.1989), Judge Easterbrook wrote a concurring opinion tracing the short history and development in this circuit of the "slight evidence rule" as a standard of appellate review for an individual defendant's participation in a conspiracy. *Id.* at 523–24. Judge Easterbrook encouraged his brethren to "throw [the slight evidence standard] overboard" and adopt the "substantial evidence" formula in its stead. *Id.* at 524. Both versions of the test we have used to measure the sufficiency of the evidence concerning a defendant's participation in a conspiracy are derived from an unjustified dilution of an acceptable standard rather than from a principled and reasoned development of the law. Judge Easterbrook's suggestion has merit, and we now take the same forthright action as the Fifth Circuit in *United States v. Malatesta,* 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979), and "banish[ ] [the slight evidence rule] as to all appeals hereafter to be decided by this Court" from cases tried after the date of this opinion.

Our initial response to the "slight evidence rule" for assessing a defendant's participation in a conspiracy should have

been a valid application of Portia's ruling on Bassanio's "motion" in *The Merchant of Venice:* " 'Twill be recorded for a precedent,/ And many an error by the same example/ Will rush into the [Circuit] [1]: it cannot be." *The Merchant of Venice,* act IV, sc. 1, lines 220–22. Instead, in *United States v. Robinson,* 470 F.2d 121, 123 (7th Cir.1972), we incorporated the "slight evidence" language used by the Ninth Circuit in *Hernandez v. United States,* 300 F.2d 114, 121–22 (9th Cir.1962), into our own standard of appellate review of a defendant's participation in a conspiracy.

We have used two formulations of essentially the same test to measure the sufficiency of the evidence of a defendant's participation in a conspiracy. In *United States v. Xheka,* 704 F.2d 974, 988 (7th Cir.1983), we stated that "[o]nce a conspiracy is shown to exist[,] evidence that establishes a particular defendant's participation beyond a reasonable doubt, although the connection between defendant and conspiracy is slight, is sufficient to convict." [2] *See also Troop,* 890 F.2d at 1397; *Herrero,* 893 F.2d at 1532; *Grier,* 866 F.2d at 924; *United States v. Vega,* 860 F.2d 779, 795 (7th Cir.1988); *United States v. Alverez,* 833 F.2d 724, 728 (7th Cir.1987); *Abayomi,* 820 F.2d at 906, following *Xheka.* A second version of the slight evidence rule provides: "Once the existence of a conspiracy is proven only very slight evidence is needed to establish a defendant's membership in the conspiracy." *United States v. Douglas,* 874 F.2d 1145, 1152 (7th Cir.1989); *see also*

*United States v. Nesbitt,* 852 F.2d 1502, 1510 (7th Cir.1988); *United States v. Whaley,* 830 F.2d 1469, 1473 (7th Cir.1987); *United States v. Gironda,* 758 F.2d 1201, 1217 (7th Cir.1985). The "slight connection" language first appeared in *United States v. Xheka,* 704 F.2d 974, 988 (7th Cir.1983), and the "slight evidence" formula found its way into our jurisprudence in *United States v. Robinson,* 470 F.2d 121, 123 (7th Cir.1972). The two variations are relatively recent entrants into this circuit's case law, and, as the following genealogy will demonstrate, both formulas are based on deviations from the general rule that a jury's verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.

In *Robinson,* we relied upon the Ninth Circuit's decision in *Hernandez,* 300 F.2d at 121–22, which in turn cited as precedent *Nye & Nissen v. United States,* 168 F.2d 846, 852 (9th Cir.1948), *aff'd,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), for the proposition that once the conspiracy is established, "very little is required to show that a defendant became a party—'slight evidence may be sufficient to connect the defendant with it.' " *Hernandez,* 300 F.2d at 121–22. *Nye & Nissen* cited *Meyers v. United States,* 94 F.2d 433 (6th Cir.), *cert. denied,* 304 U.S. 583, 58 S.Ct. 1059, 82 L.Ed. 1545 (1938), and *Phelps v. United States,* 160 F.2d 858 (8th Cir.1947), *cert. denied,* 334 U.S. 860, 68 S.Ct. 1525, 92 L.Ed. 1780 (1948), for its slight evidence standard.[3] Unfortunately, the court in *Nye*

---

**1.** Portia's purported concern was setting bad precedent in the "State."

**2.** This phrase arguably is an accurate version of the principle of conspiracy law holding even a defendant who played a minor role in a conspiracy culpable as a conspirator. *See United States v. Liefer,* 778 F.2d 1236, 1247 n. 9 (7th Cir.1985) (citing *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982)). Nonetheless, such a phrase, as we have used it in the past, is an inappropriate measure of the sufficiency of the evidence linking a defendant to a conspiracy.

**3.** In *Nye & Nissen,* the Ninth Circuit also cited another Eighth Circuit case, *Galatas v. United States,* 80 F.2d 15, 24 (8th Cir.1935), which articulated a "slight evidence may be substantial" rule similar to that in *Meyers* and *Phelps*: "Where a conspiracy is established, but slight

evidence connecting a defendant therewith may still be substantial, and if so, sufficient." *Id.* (quoting *Tomplain v. United States,* 42 F.2d 202 (5th Cir.), *cert. denied,* 282 U.S. 886, 51 S.Ct. 90, 75 L.Ed. 781 (1930)). Curiously, nowhere in *Tomplain* is there any language to the effect that "slight evidence" may be "substantial." *Tomplain* merely stated, without any citation to authority, "The conspiracy was conclusively established, and but slight evidence connecting the defendants was necessary." *Id.* at 203. One commentator has identified *Tomplain* as the first case to articulate the "slight evidence" rule for connecting alleged conspirators to a conspiracy. *See* Note, *Connecting Defendants to Conspiracies: The Slight Evidence Rule and the Federal Courts,* 64 Va.L.Rev. 881, 881 (1978). We too have failed to unearth an antecedent to *Tomplain.*

& *Nissen* corrupted the tests applied in *Meyers* and *Phelps*. The *Meyers* test was, "The jury having found guilt, *slight evidence connecting a defendant with a conspiracy may be substantial* and, if it is, is sufficient." *Meyers*, 94 F.2d at 434 (emphasis added). The Eighth Circuit described the test it applied in *Phelps* as follows:

> Once there is satisfactory proof that a conspiracy has been formed, the question of a particular defendant's connection with it may be merely a matter of whether the stick fits so naturally into position in the fagot as to convince that it is a part of it. *It is therefore possible for the circumstances on an individual defendant's participation in an established conspiracy to become substantial from their weight in position and context, though in abstraction they may only seem slight.*

*Phelps*, 160 F.2d at 867–68 (emphasis added). Both the *Phelps* and *Meyers* tests stand for the unremarkable proposition that evidence that is quantitatively slight may be substantial qualitatively when put in context with other evidence in the case. *Nye & Nissen*, however, deleted all reference to "substantial evidence," thereby creating a standard of review capable of an unconstitutional meaning. *See Martinez de Ortiz*, 883 F.2d at 524 (Easterbrook, J., concurring). To uphold a defendant's conviction for conspiracy, the Phelps and Meyers formulas essentially require qualitatively substantial evidence of a defendant's participation in the conspiracy. The *Nye & Nissen* standard, which inexplicably dropped the *Phelps* and *Meyers* "substantial in context" requirement in favor of a weaker "slight evidence" approach, could be interpreted to mean that evidence may be sufficient to establish guilt beyond a

reasonable doubt even though it is "slight."[4] Such ambiguity is constitutionally hazardous.

We also cited *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), in *Robinson* as support for the slight evidence standard. The Supreme Court in *Glasser*, however, stated that "[t]he verdict of a jury must be sustained if there is *substantial evidence*, taking the view most favorable to the Government, to support it." *Id.* at 80, 62 S.Ct. at 469 (emphasis added). The Supreme Court has consistently stated that substantial evidence, viewed in the light most favorable to the government, must support the jury's verdict. *See Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974).

As authority for the second version of our sufficiency of the evidence rule for conspirator participation, the "slight connection" formula, we relied in *Xheka* on *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir.1980). *Xheka*, 704 F.2d at 988. We note that the Ninth Circuit "slight connection" test has the same dubious heritage we have recounted for the "slight evidence" formula. The Ninth Circuit in *Nye & Nissen*, 168 F.2d at 852, misstated the *Phelps* and *Meyers* tests, and attempted to redeem itself twenty-nine years later by opting for the "slight connection" language over the "slight evidence" phrasing in its sufficiency formula for conspirator participation in *United States v. Dunn*, 564 F.2d 348, 356–57 (9th Cir.1977). In *Dunn*, the Ninth Circuit recognized that the litany of "slight evidence may be sufficient" to connect a defendant to a conspiracy may be highly misleading

---

4. Without explanation, the Eighth Circuit has apparently dropped the *Phelps* substantially in context requirement for evidence connecting an alleged co-conspirator to a conspiracy. *Compare United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.) (where government has established the conspiracy, "even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient" to prove his participation), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974), *with*

*United States v. Mims*, 812 F.2d 1068, 1075 (8th Cir.1987) ("Once a conspiracy is established, even slight evidence connecting the defendant to the conspiracy may be sufficient proof of his involvement."). As recently as 1984, however, the Eighth Circuit followed the substantiality in context requirement. *See United States v. Michaels*, 726 F.2d 1307, 1311 (8th Cir.1984) (quoting *Overshon*'s "substantial in context" formula), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).

and could be construed to vitiate the government's omnipresent burden of proving guilt beyond a reasonable doubt. *Id.* at 356. The *Dunn* court stated: "We confess to having repeatedly proliferated, although we did not initiate, [the slight evidence standard], a principle that has become part of the cant in conspiracy cases." *Id.* The *Dunn* "slight connection" test was quoted in full in *Melchor–Lopez,* which we cited as the source of this circuit's "slight connection" version of the sufficiency of the evidence test for conspirator participation.

■■■ We concede that this circuit has continued to apply both the "slight evidence" and "slight connection" standards in conspiracy cases long after the Ninth Circuit recognized the defects in the "slight evidence" version. While we denied, in *United States v. Baskes,* 687 F.2d 165, 168–69 (7th Cir.1981) (per curiam), that we implicitly follow a substantial evidence standard rather than a slight evidence standard for establishing participation in a conspiracy, we have never explained why we rely on such a poorly articulated standard of such suspect lineage. As Judge Easterbrook noted in *Martinez de Ortiz:*

> "Conspiracy" is a net in which prosecutors catch many little fish. We should not go out of our way to tighten the mesh. Prosecutors have many legitimate advantages in the criminal process. Defendants' great counterweight is the requirement that the prosecution establish guilt beyond a reasonable doubt. References to "slight evidence" and "slight connection" reduce the power of that requirement.

883 F.2d at 524–25. Upon further reflection, we find that when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, "substantial evidence" should be the test rather than "slight evidence" or "slight connection."[5] While the Supreme

---

**5.** Resort to our case law prior to the "slight evidence/connection" rule infestation is of little avail. Prior cases imposed generally more stringent, but varying, tests for challenges to the sufficiency of the evidence. *See, e.g., United States v. Holmes,* 452 F.2d 249, 256 (7th Cir.) ("Taking the evidence as a whole in the light most favorable to the Government, and noting the absence of contradictory evidence, the jury could properly infer that ... Holmes was a knowing participant in the conspiracy...."), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479 (1971); *United States v. Sangster,* 442 F.2d 1289, 1293 (7th Cir.1971) ("Having reviewed the evidence before us in the light most favorable to the Government, together with all reasonable inferences to be drawn therefrom, we readily conclude that Sangster's guilt was established beyond all reasonable doubt on the substantive count as well as the conspiracy count. It was overwhelming."); *United States v. Aloisio,* 440 F.2d 705, 709–10 (7th Cir.) ("Since the conspiracy had already been established, this evidence, viewed in the light most favorable to the Government, sufficed to connect Jasinski with the conspiracy."), *cert. denied,* 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971); *United States v. Lewis,* 406 F.2d 486, 490 (7th Cir.) ("We conclude that there was ample testimony to prove the conspiracy...."), *cert. denied,* 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969); *United States v. Nitti,* 374 F.2d 750, 752 (7th Cir.) ("Our review of the record ... convinces us that it contains evidence which supports the defendant's conspiracy convictions."), *cert. denied,* 388 U.S. 920, 87 S.Ct. 2141, 18 L.Ed.2d 1366 (1967); *United*

*States v. General Motors Corp.,* 121 F.2d 376, 397 (7th Cir.) ("It is clear that the evidence in this case tends to show a conspiracy having as its purpose the control by the appellants of the dealers' financing."), *cert. denied,* 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941).

Essentially, our prior tests clearly or implicitly required that there be enough evidence in the record to allow the jury to find beyond a reasonable doubt that an individual defendant had participated in the alleged conspiracy. The standards of review for sufficiency of the evidence challenges that we have articulated range from the tautologous "sufficed to connect" to the stringent "beyond all reasonable doubt." None of the previous versions would be an improvement on the standard of review specified by the Supreme Court in *Burks, Hamling,* and *Glasser.* In view of the legitimate advantages the government enjoys in conspiracy prosecutions such as relaxed rules of procedure and evidence, we should not use a standard of review that could potentially diminish our review of determinations of fact at trial. Rather, we should review challenges to the sufficiency of evidence of a conspiracy's existence and an individual defendant's connection to the conspiracy under the same "substantial evidence" standard we apply to sufficiency challenges in nonconspiracy criminal appeals. *See United States v. Silva,* 781 F.2d 106, 108 (7th Cir.1986) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984).

Court has never directly addressed the issue of what standard of review for sufficiency of the evidence must be satisfied to uphold a jury finding that a defendant participated in a conspiracy, the Court has stated in three conspiracy cases that a federal appellate court must sustain a jury's verdict if there is "substantial evidence" to support it. *See Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) ("[A] federal appellate court ... must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision."); *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974) ("The general rule of application is that '[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it.'") (quoting *Glasser v. United States,* 315 U.S. 60, 68, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We are persuaded that when a criminal defendant raises a sufficiency of the evidence challenge to a conviction, including any conspiracy conviction, the correct standard of review is substantial evidence.[6] *See United States v. Davis,* 810 F.2d 474, 476 (5th Cir.1987); *United States v. Malatesta,* 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). Of course, we will continue to view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction.

█ The evidence at trial established that Durrive was more than an innocent associate of cocaine conspirators. Durrive contends that the government merely established that a series of drug-related telephone calls were made from Durrive's apartment, that an "Alex" participated in those calls, and that an FBI agent who conversed with Durrive at his arrest believed that Alex Durrive's voice was identical to that of the "Alex" on the tapes. Durrive's summary of the government's evidence, however, is hardly complete. Furthermore, Durrive's innocent construction of the government's evidence incorrectly implies that we should consider the evidence in a light most favorable to him. *See United States v. Molinaro,* 877 F.2d 1341, 1348 (7th Cir.1989); *United States v. Perlaza,* 818 F.2d 1354, 1359 (7th Cir.), *cert. denied,* 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987).

Viewed in a piecemeal fashion, the government's evidence could conceivably be as unindicative of guilt as Durrive contends. Nonetheless, we have previously noted that

> it is also imperative that we not rend the fabric of evidence and examine each shred in isolation; rather, the reviewing court "must use its experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of [inaccurate] or ambiguous inference...."

*United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983) (quoting *United States v. Kwitek,* 467 F.2d 1222, 1226 (7th Cir.), *cert. denied,* 409 U.S. 1079, 93 S.Ct. 702, 34 L.Ed.2d 668 (1979)), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984); *see also Abayomi,* 820 F.2d at 906–07. The jury could have rationally determined that Durrive was an active participant in a drug distribution conspiracy and that he used a

---

**6.** We emphasize that for purposes of appellate review, substantial evidence is necessary to connect a person with a conspiracy. It would be improper for a district court to charge a jury that only substantial evidence is needed to connect a person with a conspiracy. Such an action would only confuse the jury and would likely undermine the fundamental requirement of proof of guilt beyond a reasonable doubt for all elements of a crime. The Fifth Circuit has ruled that instructing the jury with an appellate standard of review constitutes reversible error.

*See United States v. Gray,* 626 F.2d 494, 500 (5th Cir.1980) (jury instructed that only slight evidence needed of defendant's participation established conspiracy); *United States v. Partin,* 552 F.2d 621, 628–29 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977) (same); *United States v. Hall,* 525 F.2d 1254, 1255–56 (5th Cir.1976) (same). Because we are not confronted with this issue, we merely admonish district courts against giving any instructions that could dilute the government's burden.

telephone to facilitate the criminal enterprise. Viewed in the light most favorable to the government, the tape-recorded phone conversations as well as Agent Lang's testimony that the voice on the recorded phone calls was the voice of Alexander Durrive could have established Durrive's involvement in the conspiracy and use of the telephone to facilitate cocaine distribution. During the series of phone conversations on September 13, 1988, Rene Rodriguez informed Wielochowski that he would call his supplier in Miami. Telephone toll records admitted into evidence revealed that Rene Rodriguez proceeded to call the telephone number for Alex Durrive's residence. Wielochowski testified that when she attempted to call Rene Rodriguez's Brownsville telephone number after he had departed for Miami to meet his supplier, a woman answering the phone supplied Wielochowski with the phone number for the Durrive residence. A person identifying himself as "Alex" participated in several drug-related conversations with Agent Shellenberger from the telephone in Alex Durrive's residence. During these conversations, "Alex" provided information corroborating Agent Lang's eventual identification of the voice as belonging to Alex Durrive when he stated that his two young children lived in the apartment. At trial, the government introduced as evidence the envelope, which was addressed to Alex Durrive and which bore Agent Shellenberger's flight information, that the arresting agents found in Alex Durrive's residence. Viewed as a whole, the government presented sufficient evidence from which a rational jury could find that Durrive participated in a cocaine distribution conspiracy and that he used a telephone to facilitate cocaine distribution.

### III. GUIDELINES § 2D1.1(b)(1) ENHANCEMENT

██ Finally, Durrive claims that the district court erred when it enhanced his base offense level under Guidelines

§ 2D1.1(b)(1) by two levels because of the presence of a loaded handgun in Durrive's apartment.[7] Durrive argues that because there was no evidence that he was committing any offense or overt act in furtherance of the conspiracy at the time of his arrest, the district court erred in enhancing his base offense level for possession of a firearm during the commission of the offense.

We must affirm the sentence imposed by the district court unless it was "imposed in violation of law or ... as a result of an incorrect application of the sentencing guidelines...." 18 U.S.C. § 3742(f)(1); *see also United States v. Guerrero,* 894 F.2d 261, 265 (7th Cir.1990); *United States v. Missick,* 875 F.2d 1294, 1300–01 (7th Cir. 1989). Section 3742(e) of title 18 requires that we give due regard to the district court's credibility determinations, accept the sentencing court's findings of fact unless they are clearly erroneous, and give due deference to the district court's application of the Guidelines to the facts. *See Guerrero,* 894 F.2d at 265; *Missick,* 875 F.2d at 1301.

██ Durrive raises an amorphous challenge to section 2D1.1(b)(1) by alleging that it "attempts to create a presumption, with no more than a speculation to support it, that a weapon owned by a person convicted of a drug offense shall be regarded as part and parcel of that offense unless the defendant proves otherwise. Such a presumption criminalizes the otherwise lawful act of possession of a firearm...." Apparently, Durrive is implying that section 2D1.1(b)(1) is unconstitutional because the commentary improperly places the burden of proof on the defendant to show that the sentencing court should not apply the enhancement provision. While failing to invoke any constitutional provision or cite any case law supporting his argument, Durrive impliedly asserts that the firearms enhancement provision violates the due process clause as interpreted by the Supreme Court in *In re Winship,* 397 U.S.

---

**7.** Section 2D1.1(b)(1) of the Guidelines provides, "If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." *See also* Guidelines § 5K2.6 ("If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range.").

358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The Supreme Court rejected a similar challenge to Pennsylvania's Mandatory Minimum Sentencing Act ("Act") in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The Pennsylvania Act provided that any defendant convicted of certain felonies would be subject to a mandatory minimum prison sentence if the sentencing judge found "by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." *Id.* at 81, 106 S.Ct. at 2413. The Court found no legislative legerdemain in a state dictating the weight a sentencing court gives to a factor bearing on the extent of punishment:

> The Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an "element" of some hypothetical "offense."
>
> \* \* \* \* \* \*
>
> Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved the sentencing schemes that mandate consideration of facts related to the crime ... without

suggesting that those facts must be proved beyond a reasonable doubt.

*Id.* at 89–90, 92, 106 S.Ct. at 2418, 2419; *see also Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The section 2D1.1(b)(1) firearm enhancement provision no more offends the due process clause than the Pennsylvania Act that the Supreme Court upheld in *McMillan*. *See United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989); *United States v. McGhee*, 882 F.2d 1095, 1097–99 (6th Cir.1989).

■ We have previously rejected Durrive's argument that a defendant must actually use the dangerous weapon to be subject to the section 2D1.1(b)(1) enhancement. *See United States v. Rush*, 890 F.2d 45, 52 (7th Cir.1989); *United States v. Franklin*, 896 F.2d 1063, 1065–66 (7th Cir. 1990) (see cases cited therein). Application note 3 to section 2D1.1(b)(1) is key to the decision of this case:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

The district court's abridged finding that Durrive's loaded .357 magnum handgun was probably connected with the offense is not clearly erroneous.[8] The handgun was

---

8. The district court's "finding" was a somewhat contracted and deferential adoption of the probation officer's calculation in the presentence report. In overruling the defendant's objection to the section 2D1.1(b)(1) enhancement, the sentencing judge stated:

> It seems clear to me that the probation officer correctly included the presence of the gun in the offense conduct and that it is an appropriate 2 point enhancement to be added to the conceded Guideline range of 28. Thus, I specifically overrule the defense objection to the inclusion in the presentence report of the information on page four, paragraph 20.

It is apparent that the sentencing judge flatly rejected defense counsel's argument that it was clearly improbable that there was any connec-

tion between the gun and the offense. Because the facts of the case strongly suggest that the defendant possessed the handgun during the conspiracy and the defendant offered no evidence or credible argument for a finding that it was "clearly improbable" that the weapon was connected with the offense, the district court's cursory finding that it should apply the section 2D1.1(b)(1) enhancement withstands appellate scrutiny. Sentencing courts are required to "state in open court the reasons for [the] imposition of a particular sentence." 18 U.S.C. § 3553(c). In a case where it is less obvious that the defendant possessed the dangerous weapon while committing the offense, a sentencing judge might run afoul of section 3553(c)'s requirement if the judge neglected to

present in Durrive's residence, a location Durrive had designated for the cocaine inspection during his phone conversations with Agent Shellenberger. Durrive's residence functioned as the conspirators' base of operations and was the locale from which Durrive furthered the conspiracy. While the temporal and spatial dimensions of a conspiracy are often difficult to delineate, the presence of the gun in the conspirators' headquarters several hours before a buyer was to appear and the day after negotiations for a buy took place strongly support a finding that Durrive possessed the weapon during the life of the conspiracy. Durrive's claim that he was sleeping immediately before his arrest and the discovery of the gun is irrelevant to a finding of whether he possessed the gun during the conspiracy. Durrive never claimed that a nonconspirator with whom he lived or a visitor owned the gun. The loaded weapon was stored in a location that was inaccessible to strangers and casual visitors but readily accessible to Durrive. *See McGhee,* 882 F.2d at 1099 (guns concealed in hidden compartments in defendant's house might not have been sufficiently readily accessible to support conviction under 18 U.S.C. § 924(c)(1), but court could find under lower guidelines standard that defendant possessed guns while committing offense). Furthermore, section 2D1.1(b)(1) does not require that the government show a connection between the weapon and the offense, only that the weapon was possessed during the offense. *See Restrepo,* 884 F.2d at 1296–97. The application note sets forth an exception to

Guideline § 2D1.1(b)(1), an exception that clearly did not apply. We cannot say that the district court's finding that the facts supported a section 2D1.1(b)(1) enhancement was clearly erroneous.

## IV.  CONCLUSION

Having concluded that there was sufficient evidence to convict Durrive of the crimes charged in the indictment and that the district court's enhancement of Durrive's sentence was not clearly erroneous, we AFFIRM Durrive's conviction and sentence.

---

explicitly state why the defendant's base offense level should be enhanced under section 2D1.-1(b)(1). We reiterate the requirement that counsel provide this court with the district court's specific findings of fact relevant to sentencing, and we repeat our request that district courts consolidate their specific findings of fact into a readily accessible form. *See United States v. Miller,* 874 F.2d 466, 469 (7th Cir.1989); *United States v. White,* 888 F.2d 490, 495–96 (7th Cir.1989). Furthermore, we remind district court clerks that they must fully comply with 18 U.S.C. § 3742(d) when preparing the record on review. Section 3742(d) provides:

If a notice of appeal is filed in the district court pursuant to subsection (a) or (b), the clerk shall certify to the court of appeals—

(1) that portion of the record in the case that is designated as pertinent by either of the parties;

(2) the presentence report;  and

(3) the information submitted during the sentencing proceeding.

In this and several other cases the record has arrived bereft of a presentence report, compelling this court to order district court clerks to fulfill their statutory duty. This common oversight causes needless delay while we await the arrival of a document essential to our review of a defendant's sentence.