922 F.2d 843
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fabio BERMUDEZ and George Gunn, Defendants-Appellants.
 Nos. 89-2527, 89-3470.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 8, 1990.*
Decided Jan. 4, 1991.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 In this consolidated appeal, defendant Fabio Bermudez and pro se defendant George Gunn appeal from their convictions for conspiring to distribute and possess with intent to distribute approximately fifty kilograms of cocaine in violation of 21 U.S.C. Sec. 846. Bermudez also appeals from his conviction for possession with intent to distribute 5,007 grams of a mixture of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, Bermudez, who was tried by a jury, challenges the sufficiency of the evidence for a conspiracy conviction. Gunn, who pleaded guilty, challenges the district court's refusal to re-enroll his counsel after he withdrew because of a conflict. Gunn also argues that the district court abused its discretion in denying his motion for the issuance of a subpoena duces tecum and in refusing to allow him to withdraw his guilty plea. We affirm.
 
 ANALYSIS
 
 2
 A. Bermudez's Appeal: Sufficiency of Evidence
 
 
 3
 Bermudez argues that there was insufficient evidence to convict him of conspiring to distribute cocaine. The facts of the case against him are as follows: in March, 1988, Gunn met with an undercover Drug Enforcement Administration ("DEA") agent, Michael Lewis, at a country club in Louisiana and told Lewis he could deliver to him at least ten kilograms of cocaine in Chicago. In early July, co-defendant Senen Archbold told Gunn that his cousin in Chicago could supply up to fifty kilograms of cocaine. In order to arrange the sale to Lewis, Archbold flew from New Orleans to Chicago and met with his cousin, co-defendant Carlos Alzamora. Alzamora directed Archbold to William "the Italian" Renzulli's real estate office for further discussion. After some preliminary meetings with Alzamora and Renzulli, Bermudez flew from New York to Chicago on July 30, 1988.
 
 
 4
 In early August, Gunn telephoned Agent Lewis with the news that a large shipment of cocaine had just arrived in Chicago. All the interested parties now converged there for the sale. On August 24, Archbold met with Renzulli and Bermudez at the real estate office to discuss the best location for the sale.
 
 
 5
 At breakfast on August 25, Archbold devised a code to identify the principal participants in the drug transaction: number one was "the Colombian" Bermudez; number two was "the Italian"; number three was Alzamora; and number four was undercover DEA agent Robert Fanter. That same morning, Bermudez walked into a jewelry store owned by Renzulli carrying a gift-wrapped package and a birthday card. While he waited for Alzamora to arrive, he placed the package in the back-room of the store. After a half hour, Bermudez retrieved the package and left the store with Alzamora.
 
 
 6
 That afternoon, Renzulli met Agent Lewis in the Jewel food store parking lot at Grand and North Avenues. He told Lewis that "Fabio" was bringing the cocaine. Five minutes later Bermudez arrived at the parking lot in a car driven by Alzamora. Bermudez removed a gift-wrapped package from Alzamora's car and placed it in Agent Lewis' car. Lewis tested the package, which contained 5007 grams of ninety-six percent pure cocaine, and gave a signal for the arrest.
 
 
 7
 When evaluating Bermudez's sufficiency of the evidence challenge, we must determine whether any rational trier of fact could have concluded that he was guilty of the crimes charged beyond a reasonable doubt. United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). To sustain the conspiracy charge against Bermudez, the government need only prove the existence of the conspiracy and a participatory link with the defendants. United States v. Caudill, Nos. 89-3522, 89-3564 & 89-3569, slip op. at 5 (7th Cir. Oct. 4, 1990). Under the newly adopted rule of this circuit, substantial evidence must support both the existence of the conspiracy and the defendants' participation in it. Durrive, 902 F.2d at 1229; United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.) (applying Durrive retroactively), cert. denied, 59 U.S.L.W. 3249 (1990). We view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction. Durrive, 902 F.2d at 1229.
 
 
 8
 Bermudez questions only his participation in the conspiracy, and not the existence of it. A jury could reasonably infer that Bermudez arrived on the scene in late July to assist in the negotiations and delivery of the cocaine. He was at a key meeting the day before the sale and, most importantly, personally delivered it to Agent Lewis in the store parking lot. Other circumstantial evidence is also probative. Archbold assigned Bermudez one of four code names, along with the other key participants. From the time of his arrival until his arrest, Bermudez changed hotels frequently and logged numerous telephone calls with all the principal conspirators. At the time of his arrest he also was carrying a telephone pager.
 
 
 9
 Bermudez argues that the government did not prove that he had contact with all the members of the conspiracy. This circuit requires no such proof for a conspiracy conviction. See United States v. Muehlbauer, 892 F.2d 664 (7th Cir.1990). Also Bermudez emphasizes the fact that the jury acquitted Alzamora but convicted him. The acquittal of a co-defendant has no relevance in reviewing the sufficiency of the evidence of another co-defendant's conviction. Given the timing and circumstances surrounding Bermudez's arrival in Chicago and all that followed, his claim to have been nothing more than an errand boy for Renzulli rings hollow. For these same reasons, we uphold Bermudez's conviction on the possession charge.
 
 B. Gunn's Appeal
 1. Motion to Re-Enroll
 
 10
 Gunn first challenges the district court's denial of his former counsel's motion to re-enroll as Gunn's attorney. On March 20, 1989, while represented by attorney Nelson Burchfield, Gunn pleaded guilty on the condition that the government dismiss a possession charge and refrain from prosecuting him for narcotics offenses in New Orleans that were related to the Chicago drug conspiracy. Before sentencing, Burchfield informed the district court that his wife, who is his paralegal secretary, had become the target of a grand jury investigation regarding the fraudulent use of Gunn's credit cards, and that he was representing her in that matter. At the hearing on this question, Burchfield explained that he had the power of attorney over Gunn's financial matters. The district court and Burchfield discussed the implications of the conflict:
 
 
 11
 THE COURT: Well, what you are raising, I think, rather, is whether you are able at this time to represent Mr. Gunn at the sentencing hearing--
 
 
 12
 MR. BURCHFIELD: Exactly.
 
 
 13
 THE COURT: --by reason of the fact that your wife is a stated target of a grand jury investigation.
 
 
 14
 MR. BURCHFIELD: Exactly, and we can, you know--
 
 
 15
 THE COURT: And more than that, because it involves alleged misuse of Mr. Gunn's ... credit cards.
 
 
 16
 MR. BURCHFIELD: And it also, of course, Your Honor, puts me in a position of--you know, I have certain moral obligations according [to] my marriage and ethical obligations according to the state and federal bar rules.
 
 
 17
 Due to this conflict, the district court allowed Burchfield to withdraw as counsel and appointed Federal Public Defender John Theis as Gunn's attorney for sentencing. Later Burchfield thought better of withdrawing and sought the district court's permission to re-enroll.[1]
 
 
 18
 As a threshold matter, Burchfield's representation of his wife in the Louisiana grand jury proceeding presented at least a serious potential for a conflict of interest--that is, the defense attorney could have been required to make a choice advancing his own interests to the detriment of his client's interests. See United States v. Horton, 845 F.2d 1414 (7th Cir.1988). Gunn insists that his waiver of the conflict cures any problem regarding Burchfield's representation. No such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Wheat v. United States, 486 U.S. 153, 160 (1988); see also Strickland v. Washington, 466 U.S. 668, 688 (1984). Because the likelihood and dimensions of nascent conflicts are notoriously hard to predict, district courts are allowed substantial latitude in refusing waivers of conflicts of interest. Wheat, 486 U.S. at 162-63. The evaluation of the facts and circumstances of each case are left primarily to the informed judgment of the trial court. Id. at 1700.
 
 
 19
 We do not think that the district court exceeded the broad latitude accorded it in making its decision. From the perspective of the district court upon being informed of the grand jury investigation, Burchfield's wife, and possibly Burchfield himself, were targets of the investigation and may have been defrauding Gunn and misusing his credit cards. The district court feared that Burchfield would use any further representation of Gunn to obtain information concerning the grand jury investigation and thereby clear himself of any wrongdoing. The district court based this conclusion on Burchfield's attempt to withdraw the guilty plea and then subpoena documents relating solely to himself. Burchfield's interests were at cross-purposes with Gunn's interests. We hold that the district court's refusal to permit the substitution of counsel in this case was within its discretion and did not violate Gunn's Sixth Amendment rights.
 
 2. Subpoena Duces Tecum
 
 20
 Gunn also argues that the district court erred in denying Burchfield's motion for the issuance of a subpoena duces tecum regarding a videotape from a May 26, 1989 television news program in New Orleans. The district court denied this request because it related solely to Burchfield's and his wife's activities in New Orleans and was not relevant to Gunn's sentencing. This finding by the district court that the subpoenaed videotapes were not reasonably relevant must be sustained absent a showing that the factual determinations on which that finding is based are clearly erroneous, or that the district court's finding is itself an abuse of discretion. See United States v. Lehman, 887 F.2d 1328, 1335 (7th Cir.1989). Gunn has made no such showing in this case and the district court properly denied this request for unrelated documents that Burchfield might have hoped to use in his own defense.
 
 3. Withdrawal of Guilty Plea
 
 21
 Finally, Gunn argues that the district court erred in denying his motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d). Gunn's substitute counsel adopted Burchfield's motion to withdraw the plea. Gunn alleges that the government breached its plea agreement not to prosecute him in Louisiana for narcotics offenses related to the conspiracy claim when it targeted his attorney.
 
 
 22
 Rule 32(d) requires a "fair and just reason" for a presentence guilty plea withdrawal. A defendant does not have an absolute right to withdraw a guilty plea, and the decision whether to allow a plea withdrawal is within the sound discretion of the district court. United States v. Alvarez-Quiroga, 901 F.2d 1433, 1436 (7th Cir.), cert. denied, 59 U.S.L.W. 3249 (1990). The district court determined that the investigation of Burchfield and his wife regarding their use of Gunn's credit cards had nothing to do with Gunn's drug conspiracy and further noted that Gunn had not been indicted on additional charges in Louisiana in violation of the agreement. The district court stated, "whether or not Mr. Burchfield and his wife were stealing from either Mr. Gunn or utilizing his credit cards to defraud others is something that [has] just never been a part of this case." Such unrelated matters do not present a fair and just reason for withdrawing a guilty plea, and the district court did not abuse its discretion in refusing to grant Gunn's motion.
 
 CONCLUSION
 
 23
 For all these reasons, the convictions of Bermudez and Gunn are
 
 
 24
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Defendants-appellants have filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Burchfield's continuing interest in this case is questionable. Although this court conditionally granted his request to file a brief in this court on Gunn's behalf, he has filed no such brief