1 F.3d 1245
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Luis SANCHEZ, Defendant-Appellant.
 No. 92-2607.
 United States Court of Appeals, Seventh Circuit.
 Argued June 16, 1993.
Submitted July 23, 1993.
 
 Before EASTERBROOK, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Rose Ann Lenena owned the Star Coin Jewelry Store, a small jewelry booth in a busy flea market/shopping center on Chicago's south side. Lenena and Luis Sanchez, who she refers to as her common law husband, were arrested in the jewelry booth during the sale of heroin to an undercover police officer. Each was charged in a three-count indictment of conspiracy (21 U.S.C. Sec. 846) and two counts of possession with intent to distribute heroin (18 U.S.C. Sec. 841(a)(1)).
 
 
 2
 Pursuant to a plea agreement Lenena pled guilty to one count of possession with intent to distribute heroin. Sanchez pled not guilty to the charges against him and was tried before a jury and found guilty of all counts. Sanchez appeals, contending that the government failed to submit evidence sufficient to prove him guilty beyond a reasonable doubt of conspiracy to possess heroin with intent to distribute it.
 
 I. FACTS
 
 3
 The Drug Enforcement Agency (DEA) received information from an informant that a woman in a wheelchair (Lenena) was selling heroin from the Star Coin Jewelry Store. Acting on this information, Calvin Holliday, a Chicago police officer assigned to DEA telephone Lenena at the jewelry booth on May 8, 1991. Holliday indicated he was interested in buying heroin. Lenena arranged to meet Holliday at the booth at 3:30 p.m. Holliday arrived at the appointed time and Lenena told her employees to leave the area. Lenena then made the drug sale pitch to Holliday. She gave Holliday a sample from one of two "hockey puck" shaped packages, each of which contained approximately 100 grams of heroin. Holliday took the sample with him and a lab test confirmed that it was wholesale quality heroin.
 
 
 4
 The next morning, May 9, 1991, Holliday telephone Lenena and told her he would like to make a buy. The buy was set for 4:00 p.m. that day, and Holliday agreed to call a few minutes before coming so that Lenena could send her employees away.
 
 
 5
 A little before 4:00 p.m., Holliday telephoned Lenena as agreed. Shortly thereafter, he arrived at the booth. Lenena was alone. Holliday stepped into the booth and sat down near Lenena. At that time, Holliday agreed to purchase the unopened package of heroin at the requested price of $25,000. A short time later, just as Lenena was handing the heroin to Holliday, Sanchez entered the booth. Lenena told Holliday, "Don't worry, that's my husband." Holliday then took the package of heroin, wrapped in electrical tape, out of the paper bag and examined it. After examining the heroin Holliday opened his coat and displayed the $25,000 "flash" roll. He then placed the heroin package in his coat pocket and took the $25,000 in cash from inside his coat and began to hand it to Lenena. Lenena said, "Give it to my husband to count." Holliday handed the roll of bills in the direction of Sanchez. As Sanchez reached out to take the money, Holliday gave the arrest signal, the team moved in, arresting Sanchez and Lenena.
 
 
 6
 Carlos Mostek, another Chicago police officer assigned to the DEA, participated in the surveillance of the jewelry booth on May 9th. Prior to Holliday's arrival Sanchez was observed leaning on the booth counter closely watching people in the mall. As Holliday entered the area, Sanchez looked him up and down for about five seconds and then walked away from the jewelry counter. As Sanchez passed Mostek, he looked at him from his eyes down to his feet and back up to his eyes. Sanchez then returned to the booth, where Holliday was now seated with Lenena.
 
 
 7
 Rose White, a former employee of Lenena, testified that Sanchez picked up Lenena at the jewelry booth every day between 4:00 and 6:00 p.m., but that she never saw Sanchez with drugs or spoke with him about drugs. White also testified that Lenena had told her not to let Sanchez know about the heroin or the money.
 
 
 8
 The jury found Sanchez guilty, and he was subsequently given three concurrent mandatory minimum sentences of 60 months.
 
 II. ANALYSIS
 
 9
 The sole issue is whether the evidence was sufficient to prove Sanchez guilty of conspiring with Lenena to possess heroin with intent to distribute.[1] On appeal, this court must view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the government, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Curry, 977 F.2d 1042, 1053 (7th Cir.1992); United States v. Durrive, 902 F.2d 1221 (7th Cir.1990).
 
 
 10
 A conspiracy is a confederation between two or more persons formed for the purpose of committing a criminal act through their joint efforts. United States v. Lamon, 930 F.2d 1183, 1190 (7th Cir.1991). The government must present "substantial evidence" establishing that defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose. United States v. Durrive, 902 F.2d 1221, 1228-29 (7th Cir.1990). Defendant's participation in a conspiracy may be proved by circumstantial evidence. United States v. Lechuga, slip op., No. 91-2891 (7th Cir. May 13, 1993) (en banc); United States v. Gutierrez, 978 F.2d 1463, 1468 (7th Cir.1992).
 
 
 11
 The government cannot meet its burden concerning a defendant's participation by proving his mere knowledge, association or presence. See United States v. Townsend, 924 F.2d 1385 (7th Cir.1991). Thus, Sanchez's general association with Lenena as her common law husband, or his mere presence at the jewelry booth on the day of the heroin sale, would be insufficient to find defendant guilty. See United States v. DeSoto, 885 F.2d 354 (7th Cir.1989). As we noted in DeSoto, we must ensure that the government proves that a defendant took a step beyond mere association and "guard against guilt by familial association when a conspiracy is alleged to be composed of family members such as husband and wife". Id. at 367.
 
 
 12
 An essential element of a conspiracy is a "participatory link" between the conspiracy and the defendant. United States v. Navarez, 954 F.2d 1375, 1380-81 (7th Cir.1992). "Participation" requires substantial evidence to establish that the defendant engaged in affirmative conduct to aid in the success of the venture. United States v. Gonzalez, 933 F.2d 417, 443 (7th Cir.1991).
 
 
 13
 The government argues that substantial evidence establishes beyond a reasonable doubt that Sanchez participated in a conspiracy to sell heroin: Sanchez conducted "counter-surveillance" prior to the sale; he entered the booth in time for the heroin to be passed to Holliday for inspection; Lenena's comment at that time to Holliday, "Don't worry, that's my husband"; Sanchez remained in the booth and reached for the roll of cash offered by Holliday when Lenena said, "Give it to my husband to count."
 
 
 14
 We agree that, viewing the evidence and all reasonable inferences that can be drawn from it in a light most favorable to the prosecution, the combination of these factors was sufficient to permit a reasonable jury to find defendant guilty.
 
 
 15
 Whether Sanchez was acting as a look-out is a question for the jury, United States v. Pazos, slip op., No. 92-1274 (7th Cir. May 11, 1993), and the jury may have attached some weight in that regard to Mostek's testimony describing Sanchez's pre-sale conduct. Mostek observed Sanchez at the counter, glancing in both directions, scrutinizing Holliday when he arrived, then walking down the mall aisle and looking Mostek up and down as they passed. Standing alone this does not constitute strong evidence of counter-surveillance, but it was relevant evidence which the jury could consider along with the circumstances then existing. Id.
 
 
 16
 More significant is what happened in the jewelry booth. It would be a fair inference for the jury to conclude that the response of Sanchez in reaching for the $25,000 roll of bills--following Holliday's examination of the heroin and Lenena's direction to Holliday to give the money to Sanchez--represented active participation in the drug transaction. Counting money in a drug transaction is a factor which may be considered in determining participation in a conspiracy. United States v. Haren, 952 F.2d 190, 194 (8th Cir.1991).
 
 
 17
 The jury would certainly be entitled to doubt that Holliday was a $25,000 jewelry customer given the nature of the "merchandise" examined by Holliday. Moreover, it was essentially a flea market booth where the average piece of jewelry sold for $20 and the most expensive sale totalled about $300. Even at a glance it was clear that money flashed represented no small sum. The money roll measured two inches thick.
 
 
 18
 Furthermore, Lenena's reassurance to Holliday "Don't worry he's my husband" provided a reasonable inference that Lenena trusted Sanchez with knowledge of the sale, which in turn implies that Sanchez knew about the sale, and, combined with other factors, could show that he was a participant in the conspiracy. In the initial meeting between Lenena and Holliday, all employees were sent away from the booth. In the second meeting Lenena again cautioned Holliday to telephone first. When he arrived all employees were again absent. Yet Sanchez was present to observe and apparently count the money and Lenena was quite comfortable with Sanchez's presence. Combined with the other facts, the jury could reasonably conclude that Lenena's "trust" in Sanchez's presence during a sizeable drug transaction was another building block to support a verdict of guilty with regard to conspiracy. United States v. Rodriguez, 975 F.2d 404, 412 (7th Cir.1992).
 
 III. CONCLUSION
 
 19
 As Sanchez argued to the jury, it could have concluded that he was merely passing time observing customers in the mall; and that he stumbled into a drug transaction which he sat through but knew nothing of, even though he was about to count the considerable proceeds of the sale. On the other hand, in viewing the evidence as a whole it was not unreasonable for the jury to come to the opposite conclusion--as it did. This determination was exclusively a matter of fact finding. The evidence was substantial enough to pass muster and the convictions of Luis Sanchez are AFFIRMED.
 
 
 
 [1]
 As the district court properly advised the jury, if Sanchez cannot be found guilty of conspiracy on the basis of the evidence in this case the convictions for possession must fail as well. See Pinkerton v. United States, 328 U.S. 640, 647 (1946)